## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :   Chapter 11
                                              :
RMH FRANCHISE HOLDINGS, INC., *et al.*,       :   Case No. 18-11092 (BLS)
                                              :
                    Debtors.[1]               :   (Joint Administration Pending)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (this "Motion") for the entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), pursuant to sections 105, 361, 362, 363, 506, 507(b) and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) authorizing the Debtors to use Cash Collateral[2] subject to the terms and conditions set forth in the Interim Order; (b) providing certain adequate protection to the Senior Creditors (defined below) in the form and manner provided for in the Interim Order; (c) scheduling, pursuant to Bankruptcy Rule 4001(d), a final hearing (the "Final Hearing") to consider entry of an order granting the relief

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  RMH Franchise Holdings, Inc. (7150); RMH Franchise Corporation (1807); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); Contex Restaurants, Inc. (0710).  The Debtors' principal offices are located at One Concourse Parkway, N.E. Suite 600, Atlanta, GA 30328.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Interim Order.

requested in the Motion on a final basis (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders"); and (d) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Mitchell Blocher In Support of Debtors' Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration"), filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 506, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 7062 and 9014 and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

## BACKGROUND

**A.      General**

2.      On the May 8, 2008 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner.

3.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

**B.      Capital Structure of the Debtors**

*i.      Senior Obligations*

4.      RMH Franchise Holdings, Inc. and RMH Franchise Corporation, as borrowers, and Bank of America, N.A. in its capacity as Administrative Agent, Collateral Agent, and L/C Issuer, and the Lenders (as defined in the Credit Agreement, collectively, the "Senior Lenders" and together with the Agent, the "Senior Creditors") are parties to that certain Amended and Restated Credit Agreement dated as of December 20, 2013 (as amended, modified, restated and/or supplemented, the "Credit Agreement" and together with all other documents, instruments, and agreements delivered in connection with the Credit Agreement, as amended modified, restated and/or supplemented, the "Loan Documents").   Debtors Contex Restaurants, Inc., RMH Illinois, LLC, and NuLnk, Inc. are guarantors of the obligations of the other Debtors under the Loan Documents (the "Senior Obligations"), and the Secured Creditors have valid, perfected liens in substantially all assets of all of the Debtors other than Contex Restaurants, Inc. and NuLnk, Inc.,[3] including the Debtors' cash collateral.

5.      As of the Petition Date, the Debtors were liable under the Loan Documents in an aggregate principal amount of not less than $69,393,011.79, plus additional potential pre-petition interest, fees, expenses, and other amounts arising in respect of such obligations immediately prior to the Petition Date.   As of the Petition Date, the Debtors were in default of the Credit Agreement and/or other Loan Documents.

---

[3] Based on the Debtors' search, no UCC financing statement was filed against NuLnk, Inc. with the Delaware secretary of state prior to the Petition Date, nor was any UCC financing statement filed against Contex Restaurants, Inc. with the Texas secretary of state prior to the Petition Date.

*ii.    BMO Unsecured Claims*

6.    In August 2015, RMH Franchise Holdings, Inc. and RMH Franchise Corporation financed the acquisition of 33 Indiana and Ohio franchise locations with unsecured debt (the "BMO Loan Debt") from BMO Harris Bank N.A. ("BMO"), pursuant to that certain Loan Authorization Agreement dated August 26, 2016 and related documents.  The BMO Loan Debt is guaranteed by a non-Debtor affiliate, but is not guaranteed by the other Debtors.  The BMO Loan debt is not secured by any collateral of the Debtors and, although structurally subordinate to the Senior Creditors as a result, is also subordinate to the Senior Creditors by virtue of a Subordination Agreement dated as of August 26, 2015.

7.    Interest accruing on the BMO Loan Debt is paid-in-kind, or PIK, interest that accumulates monthly to the outstanding principal balance at a rate of 4.75% per annum.  As of the Petition Date, the outstanding balance of the BMO Loan Debt is in excess of $30 million.

*iii.    Other Unsecured Obligations*

8.    In the ordinary course of operating their business, the Debtors utilize goods and services from hundreds, if not thousands, of trade vendors.  Many of these creditors will have a prepetition claim against the Debtors due to the commencement of these chapter 11 cases.

**RELIEF REQUESTED**

9.    By this Motion, the Debtors request the Court to enter the Cash Collateral Orders:  (a) authorizing the Debtors to use Cash Collateral, subject to the terms and conditions set forth therein; (b) granting certain adequate protection to the Senior Creditors in the form and manner provided for in the Interim Order; (c) scheduling the Final Hearing within approximately thirty days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis; and (d) granting related relief.

## THE DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL

10.     As set forth in the First Day Declaration, the Debtors require immediate access to Cash Collateral to ensure that they are able to continue the operation of their businesses, as the Cash Collateral is the Debtors' sole source of funding for their operations and the costs of administering the chapter 11 process.  Absent authority to immediately use Cash Collateral, the Debtors, their creditors and the estates generally would suffer irreparable harm because the Debtors would immediately cease operations, which, in turn, would cause an immediate and pronounced deterioration in the value of the Debtors' businesses.  Thus, the Debtors' access to Cash Collateral is absolutely necessary to preserve and maximize value for the benefit of all of the Debtors' stakeholders.

11.     As further set forth herein and in the Interim Order, the Interim Order provides adequate protection to the Senior Creditors in the form of, among other things, superpriority claims and replacement liens to protect the Senior Creditors against any diminution in value arising from the Debtors' use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  In addition, the Interim Order provides the Senior Creditors with adequate protection in the form of certain adequate protection payments. Specifically, (i) within one (1) business day of entry of the Interim Order, the Debtors shall pay to Agent, for the benefit of the Senior Lenders, the amount of $5,000,000.00 out of excess cash accumulated by Debtors as of the Petition Date in the Operating Accounts; and (ii) the Debtors shall make monthly interest payments to Agent.[4]

---

[4]  Agent and Senior Lenders reserve the right to charge and collect interest, including default interest, at the rates set forth in the Loan Documents.

12.     The Debtors propose to make disbursements pursuant to a budget annexed to the Interim Order as Exhibit A, subject to certain permitted variances provided for in the Interim Order.

13.     Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to operate their businesses, and thus preserve and maintain the value of the Debtors' estates.  Without such access to liquidity, the Debtors' ability to navigate through the chapter 11 process will be jeopardized, to the detriment of the Senior Creditors and all of the Debtors' other stakeholders.  As a result, the Debtors have an immediate need to use Cash Collateral to ensure sufficient liquidity throughout the pendency of these chapter 11 cases.

## CONCISE STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

14.     The following chart (the "Summary of Material Terms Chart") contains a summary of the material terms of the Interim Order, in accordance with Bankruptcy Rule 4001(b)(1) and Local Rule 4001-2(a)(ii):[5]

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | Bank of America, N.A. in its capacity as Administrative Agent, Collateral Agent, and L/C Issuer, and the Lenders pursuant to the Loan Documents. | ¶ E |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule* | The Debtors seek to use Cash Collateral to pay the expenses set forth in the cash collateral budget attached as Exhibit A to the Interim Order. | ¶ 3 |

---

[5]  The Summary of Material Terms Chart and any other description of the Interim Order provided for in this Motion is qualified in its entirety by the actual terms of the Interim Order.  The actual terms of the Interim Order will control in the event of any inconsistency between this Motion (including the Summary of Material Terms Chart) and the Interim Order.

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| *4001(b)(1)(B)(ii)* <br><br> *Local Rule 4001-2(a)(i)* | | |
| **Budget** <br><br> *Bankruptcy Rule 4001(b)(1)(B)(ii)* | The expenses set forth in the Budget represent those post-petition expenses that must be paid in the ordinary course or to avoid immediate and irreparable harm. | ¶ 3 |
| **Duration of Use of Cash Collateral / Termination Events/ Relief from Stay** <br><br> *Bankruptcy Rule 4001(b)(1)(B)(iii)* <br><br> *Local Rule 4001-2(a)(ii)* | <u>Termination Date</u>.  Debtors' ability to use Cash Collateral under the Interim Order shall terminate on the earlier of: (i) June 9, 2018 at 5:00 p.m. eastern, (ii) the occurrence of a Termination Event, and (iii) entry of a final or additional interim order regarding cash collateral. <br><br> <u>Termination Events</u>.   Each of the following shall constitute a "Termination Event" under the Interim Order: (a) failure of Debtors to abide by the terms, covenants, and conditions of the Interim Order or the Budget (subject to any permitted variances); (b) the use of Cash Collateral for any purpose not authorized by the Interim Order; (c) failure of Debtors to timely pay fees of the U.S. Trustee;  (d) appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers; (e) termination of Debtors' franchise agreements with Applebee's Restaurants LLC, Applebee's Franchisor LLC, or any of their respective affiliates; (f) Conversion of the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code; (g) the Chapter 11 Cases are dismissed; (h) the entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order; or (i) Debtors seek to obtain financing that does not satisfy the Obligations in full that seeks to prime Agent's lien on any of the Collateral. <br><br> <u>Relief from the Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Debtors to implement and perform the terms of the Interim Order | ¶¶ 15, 24, 27 |
| **Proposed Adequate Protection** <br><br> *Bankruptcy Rule 4001(b)(1)(B)(iv)* <br><br> *Local Rule 4001-2(a)(i)(B)* | <u>Replacement Liens</u>. As adequate protection for the respective interests of the Senior Creditors, for, and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the Agent is hereby granted, on behalf of itself and for the benefit of the Senior Lenders, a continuing replacement security interest in, and lien, effective as of the Petition Date without the necessity of Agent taking any further action, upon the right, title and interest in the following property of the Debtor:  (a) all pre-petition | ¶¶ 4, 6, 7, and 11 |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
|  | Collateral of Senior Creditors, including all proceeds, profits, rents, and products thereof; and (b) property acquired by the Debtors after the Petition Date, which is of the same nature, kind, and character as the pre-petition Collateral, and all proceeds, profits, rents, and products thereof (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens that they replace.<br><br>Adequate Protection Superpriority Claim (¶ 6(c)(i)).  In the event that the adequate protection provided in the Interim Order is insufficient to protect the security interests of Senior Creditors from the Debtors' use of Cash Collateral or from a diminution in value of the Collateral, upon entry of the Final Order, the Senior Creditors' claim in the Chapter 11 Cases shall have priority under 11 U.S.C. § 507(b) to the extent, if any, that the adequate protection for Debtor's use of the Collateral and Cash Collateral proves to be inadequate.<br><br>Adequate Protection Payments.  (i) within one (1) business day of entry of the Interim Order, the Debtors shall pay to Agent, for the benefit of the Senior Lenders, the amount of $5,000,000.00 out of excess cash accumulated by Debtors as of the Petition Date in the Operating Accounts; and (ii) the Debtors shall make monthly interest payments to Agent, for the benefit of the Senior Lenders.<br><br>Access to Books and Records and Reporting.  The Debtors shall supply to the Agent not later than five (5) business days after the Court's entry of the Interim Order and thereafter as soon as possible following Agent's request in its sole and reasonable discretion the following or as otherwise to be provided as set forth below: (a) all financial information and other information relating to the Debtors' operations or any of the Collateral requested by Agent; (b) an accounting of all Cash Collateral actually spent by the Debtors since the Petition Date in comparison to the projected expenditures set forth in the Budget, including a line-item, side-by-side comparison of the amounts actually spent within the corresponding projected expense categories contained in the Budget, which shall be delivered to Agent by not later than Tuesday of each week following entry of the Interim Order; (c) as and when filed, all reports and other documents and pleadings filed by the Debtors with the Bankruptcy Court; (d) a weekly cash flow statement in a form consistent with the Budget by not later than Tuesday of each week following entry of the Interim Order, comparing Debtors' actual receipts and disbursements for the prior week to the projected receipts and disbursements set forth in the Budget; (e) all reporting requirements under the terms of the Loan Documents; (f) a reporting of same store sales within three (3) business days of the end of each month; (g) a list of any locations opened or closed during the prior week, delivered to Agent by not later than Tuesday of each week following entry of the Interim Order; (h) "Management Monthly Report" in a form similar to that previously provided to the Senior Lenders, including monthly and year-to-date financial statements (income |  |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | statement, balance sheet and cash flow), statement of restaurant-level earnings for period-to-date and year-to-date, Management discussion and analysis of current period an year-to-date results and summary of key performance indicators for the period and year-to-date results. | |
| **Carve-Out**<br><br>*Local Rule 4001-2(a)(i)(F)* | As used in the Interim Order, the "Carve-Out" means (a) allowed professional fees and disbursements of Debtors' professionals incurred on or prior receipt by Debtors of written notice of the occurrence of a Termination Event (i) by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a) and (ii) by professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Committee, if any, in an amount not to exceed the aggregate amount of $50,000, (b) allowed professional fees and disbursement incurred following receipt by Debtors of a notice of the occurrence of a Termination Event by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Debtors and the Committee not to exceed the aggregate amount of $250,000, and (c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court. | ¶ 13 |
| **Cross-Collateralization**<br><br>*Local Rule 4001-2(a)(i)(A)* | None, other than Replacement Liens as adequate protection. | |
| **Findings re Validity/ Perfection/Amount**<br><br>*Local Rule 4001-2(a)(i)(B)* | The Interim Order, at Paragraphs E and 18, contains certain stipulated findings of fact, including those related to the validity and enforceability of the Debtors' prepetition secured indebtedness, subject only to the limitations contained in Paragraph 13 of the Interim Order. | ¶¶ E and 14 |
| **Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(B)* | Paragraph 14 of the Interim Order provides as follows:<br><br>The stipulations contained in paragraph E of the Interim Order shall be binding upon all parties in interest, including without limitation, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estates and the Committee, if any, and all parties in interest, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estates and the Committee, if any, are deemed to have irrevocably waived and relinquished all claims and right to challenge any of the stipulations in such paragraph E, unless (a) the Committee (or, if no Committee is appointed, a party in interest other than the Debtors) has filed an adversary proceeding or contested matter (subject to the limitation set forth in the last sentence of paragraph 13 of the Interim Order) challenging the validity, enforceability, or priority of the Obligations or the Pre-petition Liens or otherwise asserting any claims or causes of action against the Agent or any other Senior Creditors on behalf of the | ¶ 14 |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| | Debtors' estates (a "Challenge Action"), no later than sixty (60) days from the date of the appointment of a Committee or, if no Committee is formed, seventy-five (75) days after the entry of the Interim Order (the "Challenge Deadline") and (b) the Court rules in favor of the plaintiff in any such adversary proceeding or contested matter. | |
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(C)* | None | |
| **552(b) Waiver**<br><br>*Local Rule 4001-2(a)(i)(H)* | None | |
| *Releases*<br><br>*Local Rule 4001-2(a)(ii)* | Effective upon entry of the Final Order and the expiration of the Challenge Deadline without the commencement of a Challenge Action, the Debtors and their respective estates (each a "Releasor" and collectively, the "Releasors") hereby release, forever discharge and acquit Agent, each of the Senior Lenders, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "Releasees") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "Pre-Petition Released Claims") of every kind, name, nature, and description (other than claims based on gross negligence or willful misconduct, which shall not be released until entry of the Final Order providing for such releases), whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against any of the Releasees arising at any time prior to the entry of the Interim Order (including, without limitation, claims relating to the Loan Documents, and other documents executed in connection therewith, and the obligations thereunder). | ¶ 20 |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Rule 4001-2(a)(i)(E)* | None | |
| **Non-Consensual Priming**<br><br>*Local Rule 4001-2(a)(i)(B)* | None | |

### **HIGHLIGHTED PROVISIONS PURSUANT TO LOCAL RULE 4001-2(a)(i)**

15. Local Rule 4001-2(a)(i) requires a debtor to: (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the proposed cash collateral order. *See* Del. Bankr. L.R. 4001-2(a)(i). As further set out in the provisions discussed above in the Summary of Material Terms Chart, the Debtors hereby disclose the below provisions (collectively, the "**Highlighted Provisions**") in accordance with Local Rule 4001-2(a)(i):

(a) ***Provisions that grant cross collateralization (Local Rule 4001-2(a)(i)(A)).*** There are no provisions that grant cross-collateralization protection (other than the Replacement Liens.

(b) ***Provision or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien (Local Rule 4001-2(a)(i)(B)).*** Without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests, or defenses prior to the expiration of the Challenge Period, the Debtors stipulated to the validity and binding nature of the Senior Obligations and that they are not subject to any defense. *See* Interim Order, ¶¶ E and 14.

(c) ***506(c) rights (Local Rule 4001-2(a)(i)(C)).*** The Interim Order does not include a 506(c) waiver.

(d) ***Provisions that immediately grant the prepetition secured creditor liens on the Debtors' claims and causes of action arising under 11 U.S.C. §§ 544, 545, 548 and 549 (Local Rule 4001-2(a)(i)(D)).*** The Interim Order does not grant the Senior Creditors liens on the Debtors' claims and causes of action arising under 11 U.S.C. §§ 544, 545, 548 and 549.

(e) ***Provisions deeming prepetition debt to be postpetition debt (Local Rule 4001-2(a)(i)(E)).*** The Interim Order does not deem prepetition secured debt to be postpetition debt.

(f) ***Carve-Out (Local Rule 4001-2(a)(i)(F)).*** The Interim Order contains no provisions for disparate treatment for any professionals retained by any Committee with respect to the Carve-Out, provided that only up to $25,000 of Cash Collateral will be made available to any Committee for investigations costs. *See* Interim Order, ¶¶ 4 and 16. The Debtors believe that the treatment

of Professionals is fair and reasonable given the expected activities of the Debtors and any Committee during these chapter 11 cases.

(g) ***Non-consensual priming (Local Rule 4001-2(a)(i)(G)).*** The Interim Order does not provide for non-consensual priming of any secured lien.

(h) ***552(b)(1) rights (Local Rule 4001-2(a)(i)(H)).*** The Interim Order does not include any provision affecting 552(b)(1) rights.

(i) ***Termination (Local Rule 4001-2(a)(ii)).*** Paragraph 15 of the Interim Order identifies a number of termination events.

(j) ***Releases (Local Rule 4001-2(a)(ii)).*** Effective upon entry of the Final Order and the expiration of the Challenge Deadline without the commencement of a Challenge Action, the Debtors and their respective estates (each a "Releasor" and collectively, the "Releasors") hereby release, forever discharge and acquit Agent, each of the Senior Lenders, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "Releasees") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "Pre-Petition Released Claims") of every kind, name, nature, and description (other than claims based on gross negligence or willful misconduct, which shall not be released until entry of the Final Order providing for such releases), whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against any of the Releasees arising at any time prior to the entry of the Interim Order (including, without limitation, claims relating to the Loan Documents, and other documents executed in connection therewith, and the obligations thereunder). *See* Interim Order, ¶20.

## **BASIS FOR RELIEF**

**I.    The Debtors' Request to Use Cash Collateral
and Proposed Adequate Protection Are Appropriate**

16.    The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.[6]    Pursuant to section 363(c)(2) of the

---

[6] The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a

Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

17.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding"); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

---

security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

18.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use.  *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.     The Proposed Adequate Protection for the Senior Creditors is Sufficient

19.     As set forth above in the Summary of Material Terms Chart, the Debtors propose to provide the Senior Creditors with several forms of adequate protection (collectively, as described above and set forth more fully in the Interim Order, the "Adequate Protection").

20.     The Debtors respectfully submit that, in light of the circumstances of these chapter 11 cases, the Adequate Protection is appropriate and sufficient to protect the Senior Creditors from any diminution in value to the Collateral during the interim period.  In particular, the Cash Collateral will be used to sustain the Debtors' business operations, allowing for the maximization of the value of the Debtors' estates.  If the Cash Collateral is not available for this purpose, the Debtors will be unable to, among other things, fund payroll obligations, procure goods and services from vendors, or otherwise maintain their business operations, thereby dissipating value to the detriment of the Senior Creditors and all other stakeholders.  The use of the Cash Collateral will therefore protect the security interests of the Senior Creditors by preserving the value of their collateral.  *See In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage"); *In re 495 Cent. Park Ave. Corp.,*

136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

21.     In light of the foregoing, the Debtors submit that the Adequate Protection to be provided for the benefit of the Senior Creditors is appropriate.   Thus, the Adequate Protection is not only necessary to protect the Senior Creditors against any diminution in value, but is also fair and appropriate, on an interim basis, under the circumstances of these chapter 11 cases to ensure that the Debtors are able to continue using the Cash Collateral in the near term, for the benefit of all parties in interest and their estates.

## II.     Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm to the Debtors' and their Estates

22.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.   However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

23.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash.   The Debtors will use cash to, among other things, continue operating their business and satisfy other working capital needs during these chapter 11 cases. The Debtors believe that all or substantially all of their available cash constitutes the cash

collateral of the Senior Creditors, as that term is used by section 363(c) of the Bankruptcy Code. The Debtors will therefore be unable to proceed with operating their businesses without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the Debtors' ability to finance their business operations, and the availability of sufficient working capital and liquidity to the Debtors through the use of Cash Collateral, is vital to the preservation and maintenance of the value of the Debtors' estates and the successful prosecution of these chapter 11 cases.

24.     The Debtors, therefore, seek immediate authority to use Cash Collateral on an interim basis, as set forth in this Motion and in the Interim Order, to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

## III.    **Modification of the Automatic Stay is Appropriate**

25.     The Interim Order contemplates a modification of the automatic stay (to the extent applicable) as necessary to, among other things, permit the Debtors to: (a) grant the security interests, liens and superpriority claims described above, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (b) authorize the Debtors to make certain payments in accordance with the terms of the Interim Order.  Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtors' business judgment, are reasonable under the present circumstances.  Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

## REQUEST FOR FINAL HEARING

26.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing within 30 days of the Petition Date, and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## NOTICE

27.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty (30) largest unsecured creditors (excluding insiders); (v) the Securities and Exchange Commission; (vi) the Senior Creditors; and (vii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary

## CONCLUSION

WHEREFORE, the Debtors request that the Court:  (a) enter the Cash Collateral Orders (i) authorizing the Debtors to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein, (ii) granting adequate protection to the extent set forth in the Cash Collateral Orders, (iii) scheduling the Final Hearing within approximately thirty (30) days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis, and (iv) granting related relief; and (b) grant the Debtors such other and further relief as is just and proper.

Dated: May 9, 2018
Wilmington, DE

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kenneth J. Enos*

M. Blake Cleary (No. 3614)
Kenneth J. Enos (No. 4544)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1256

*Proposed Counsel to the Debtors*

**<u>EXHIBIT A</u>**

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
| --- | --- |
| In re: | Chapter 11 |
| RMH FRANCHISE HOLDINGS, INC., *et al.*, | Case No. 18-11092 (BLS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Ref. Docket No.** _____ |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF

The above captioned Debtors having filed the ("Motion")[2] for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and upon Bank of America, N.A, acting in its capacity as Administrative Agent, Collateral Agent, and L/C Issuer (the "Agent") under the Credit Agreement (as defined below), having consented to the entry of this Interim Order, the Court having considered the Motion, the *Declaration of Mitchell Blocher in Support of Chapter 11 Petitions and Requests for First Day Relief*, and the evidence submitted at the interim hearing held before the Court on May 10, 2018 to consider entry of this Interim Order, it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  RMH Franchise Holdings, Inc. (7150); RMH Franchise Corporation (1807); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); Contex Restaurants, Inc. (0710).  The Debtors' principal offices are located at One Concourse Parkway, N.E. Suite 600, Atlanta, GA 30328.

[2]    Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Motion.

creditors and their estates pending the Final Hearing, and essential for the continued operation of

Debtors' businesses, and after due deliberation and consideration, and good and sufficient cause

appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      On May 8, 2018 (the "<u>Petition Date</u>"), Debtors filed petitions for relief under

Chapter 11 of the United States Bankruptcy Code (the "<u>Chapter 11 Cases</u>").  The Debtors are in

possession of their property and continue to operate and manage their businesses as debtors-in-

possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request has been made

for the appointment of a trustee or examiner.  As of the date hereof, no official committee of

unsecured creditors (together with any other statutory committee, a "<u>Committee</u>") has been

appointed in these Chapter 11 Cases.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The

Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)

and the Court may enter a final order hereon consistent with Article III of the U.S. Constitution.

The Court further finds that venue of this proceeding is proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested herein are sections 105(a), 361, 362

and 363 of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure

(as amended, the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as

amended, the "<u>Local Rules</u>").

D.      Notice of the Interim Hearing and the relief requested in the Motion has been

given in accordance with the provisions of Local Rule 9013-1(m) to (i) the Office of the United

States Trustee, (ii) the Agent, and (iii) the creditors holding the thirty 30 largest unsecured claims against the Debtors. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with all relevant provisions of the Bankruptcy Rules and Local Rules and no other or further notice need be provided.

E.      Without prejudice to the rights of a Committee (if any) or any other party in interest with standing, Debtors permanently, immediately and irrevocably acknowledge, represent and stipulate and agree (collectively, the "Stipulations"):

(i)      As of the Petition Date, Debtors RMH Franchise Holdings, Inc. and RMH Franchise Corporation as borrower (collectively, the "Borrower") were parties to that certain Amended and Restated Credit Agreement dated as of December 20, 2013 (as amended, modified, restated, or supplemented, the "Credit Agreement" and together with all other documents, instruments, and agreements delivered in connection with the Credit Agreement, as amended modified, restated, or supplemented, collectively, the "Loan Documents") by and among Borrower, Agent, and the Lenders (as defined in the Credit Agreement, collectively, the "Senior Lenders" and together with the Agent, collectively, the "Senior Creditors"), pursuant to which Loan Documents (a) the Borrower was indebted to the Senior Creditors without defense, counterclaim, recoupment, or offset of any kind, in the aggregate principal amount of $68,487,089.71 as of the Petition Date, plus pre-petition interest, fees, expenses, and other amounts arising in respect of such obligations existing immediately prior to the Petition Date, which obligations are guaranteed by valid, binding, and irrevocable guarantees of

payment executed by non-debtor ACON Franchise Holdings, LLC and Debtors Contex Restaurants, Inc., RMH Illinois, LLC, and NuLnk, Inc. as guarantors (collectively, the "Guarantors" and the obligations of the Debtors and Guarantors under the Credit Agreement and other Loan Documents, collectively, the "Obligations"), for which the Guarantors have no defenses, counterclaims, recoupments, or offsets of any kind, and (b) such Obligations are secured by valid, enforceable, properly perfected, first priority, and unavoidable liens on and security interests (the "Pre-Petition Liens") encumbering substantially all assets of the Debtors, as set forth in the Loan Documents (the "Collateral"); provided, however, that Pre-Petition Liens on the assets of NuLnk, Inc. and Contex Restaurants, Inc. are not, and shall not by this Interim Order be deemed to be, properly perfected, first priority, or unavoidable liens;

(ii)   Except as otherwise provided in Paragraph E(i) above, the Pre-Petition Liens are valid, binding, enforceable, properly perfected, first-priority liens and security interests in the Collateral and are not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, defense, claim or challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise;

(iii)   The Debtors acknowledge and agree that, prior to the Petition Date, one or more Events of Default (as such term is defined in the Credit Agreement) occurred and are continuing under the Loan Documents;

(iv)     The Pre-Petition Liens on the Collateral attach to all cash of the Debtors, wherever located, and to the Debtors' receipts and revenues and therefore all such cash, receipts, and revenues constitute "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code; and

(v)      As of the Petition Date, Bank of America, N.A, Account Nos. ******7632, ******0289, and ******5446 (collectively, the "Operating Accounts" and individually an "Operating Account"), in which Agent has a properly perfected, first-priority security interest, had a balance of $8,792,010.92 (Account No. ******7632), $3,777,640.82 (Account No. ******0289), and $212,810.79 (Account No. ******5446) as of the Petition Date, and prior to the Petition Date, Agent could have offset the amounts in the Operating Accounts.

F.     The Debtors have a pressing need for the immediate use of Cash Collateral (as defined below) to continue operating as a going concern (including funding their day-to-day operations which includes payroll, vendors, and the costs of these Chapter 11 Cases), minimize disruption, rebut any skepticism regarding the Debtors' ability to operate as a going-concern and stabilize business operations in response to these Chapter 11 Cases.  In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtors and their respective estates will occur and impair the Debtors' efforts to reorganize.

G.     The Senior Creditors consent to the Debtors' use of its Cash Collateral only upon the conditions contained in this Interim Order.

H.     The Debtors reasonably and in good faith believe that the use of the Cash Collateral is sufficient to fund all projected, legitimate, and allowable expenses of this Chapter

11 Case from the Petition Date through the period to which the Budget (as defined below) pertains;

I.        Pursuant to the Loan Documents, the Senior Creditors are entitled to adequate protection of their interests in the Collateral and the proceeds thereof.

J.        Based on the record presented to the Court by the Debtors at the Interim Hearing and the Senior Creditors' consent to use of Cash Collateral on an interim basis, the terms of the use of Cash Collateral as set forth herein are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.        The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d).  The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order is in the best interest of the Debtors' estates and their creditors.

**IT IS THEREFORE ORDERED that:**

1.        The Motion is hereby GRANTED to the extent set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.        Unless an extension is otherwise agreed to in writing by Debtors and the Senior Creditors and subject to the Carve Out for wind-down expenses after the occurrence of a Termination Event (as defined below), Debtors are authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond)

the earliest to occur of (i) the date on which a Termination Event shall occur, (ii) any order modifying Debtors' authority to use Cash Collateral and (iii) the close of business on June 9, 2018; provided that such use of Cash Collateral shall be in accordance with the Budget.

3.      The Debtors are granted limited use of Cash Collateral as follows:

a.   All Cash Collateral (as defined in section 363 of the Bankruptcy Code) that the Debtors had on hand as of the Petition Date or have received since the Petition Date, including all products and proceeds of (i) all Collateral and (ii) all funds in all bank accounts, all of which constitute Cash Collateral, is deposited or shall be deposited into the Operating Accounts maintained at Bank of America, N.A. The property described in the preceding sub-paragraphs (i) and (ii) and all proceeds thereof shall hereafter be referred to collectively as "Cash Collateral." All Cash Collateral that Debtors receive subsequent to the entry of this Interim Order shall also be swept daily into an Operating Account.  No money shall be withdrawn by Debtors from the Operating Accounts except as expressly provided hereinafter in this Interim Order.

b.   Absent the prior express consent of the Agent, the use of any Cash Collateral shall be restricted to payment, from the Operating Accounts, in the ordinary course of business, only of the expenses specified in the budget attached hereto as Exhibit A (as the same may be amended or modified from time with the consent of the Secured Creditors, the "Budget"; all references herein to the "Budget" shall mean as the same is subject to the Permitted Variances (as defined below)); provided, however, absent Agent's prior written approval, Debtors are permitted during each weekly period covered by the Budget (i) to exceed any category in the

Budget by up to ten percent (10%) and (ii) to exceed total outstanding disbursements as set forth in the Budget by up to ten percent (10%) ("Permitted Variances").

c.   The Debtors have represented that the Budget represents only post-petition expenses that must be paid in the ordinary course or to avoid immediate and irreparable harm.

d.   Under no circumstance shall Debtors:

i.   Use any Cash Collateral for any purpose other than those authorized by this Interim Order and as outlined in the Budget without the written consent of the Agent; or

ii.   Use Cash Collateral to the extent that expenses listed in the Budget are not actually incurred.

4.      As adequate protection for the respective interests of the Senior Creditors, for, and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the Agent is hereby granted, on behalf of itself and for the benefit of the Senior Lenders, a continuing replacement security interest in, and lien (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens that they replace, effective as of the Petition Date without the necessity of Agent taking any further action, upon the right, title and interest in the following property of the Debtor:

        a.      All pre-petition Collateral of Senior Creditors, including all proceeds, profits, rents, and products thereof; and

        b.      Property acquired by the Debtors after the Petition Date, which is of the same nature, kind, and character as the pre-petition Collateral, and all proceeds, profits, rents, and products thereof.

        5.      The Replacement Liens provided herein shall be deemed automatically valid and perfected with such priority as provided in this Interim Order, without any further notice or act by any party that may otherwise be required under any other law.  Notwithstanding the foregoing, the Debtors shall, upon request of the Agent, execute and deliver such documents as may be reasonably requested by Agent to create and perfect the security interests and liens described herein under applicable non-bankruptcy law and Agent shall be authorized to file and record such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto.

        6.      Agent is entitled to adequate protection of its interest in the Operating Accounts and Agent is hereby granted an allowed superpriority claim against Debtors as provided for in section 507(b) of the Bankruptcy Code with respect to all amounts held in the Operating Accounts.  As additional adequate protection, (i) within one (1) business day of entry of this Interim Order, the Debtors shall pay to Agent, for the benefit of the Senior Lenders, the amount of $5,000,000.00 out of excess cash accumulated by Debtors as of the Petition Date in the Operating Accounts, which funds are subject to Agent's properly perfected first-priority liens, are entitled to adequate protection under sections 363(e) and 553(a), and are not necessary for Debtors to pay operating expenses; and (ii) the Debtors shall make monthly interest payments (each a "<u>Monthly Interest Adequate Protection Payment</u>") to Agent, for the benefit of the Senior

Lenders, based upon interest accruing at 30-day LIBOR plus five percent (5.00%) on the indebtedness owed under the Loan Documents.[3]  This provision shall control over any inconsistent terms of the Budget.  Each Monthly Interest Adequate Protection Payment shall be delivered to Agent on the first day of each month following entry of this Interim Order until the occurrence of a Termination Event (as defined herein below).

7.      As additional adequate protection, in the event that the adequate protection provided in this Interim Order is insufficient to protect the security interests of Senior Creditors from the Debtors' use of Cash Collateral or from a diminution in value of the Collateral, upon entry of the Final Order, the Senior Creditors' claim in the Chapter 11 Cases shall have priority under 11 U.S.C. § 507(b) to the extent, if any, that the adequate protection for Debtor's use of the Collateral and Cash Collateral provided herein proves to be inadequate.

8.      Senior Creditors shall have the full protection of section 363(m) of the Bankruptcy Code with respect to the debts, obligations, liens, and security interests created or authorized by this Interim Order in the event that this Interim Order or any other authority contained or created herein is vacated, reversed, or modified on appeal or otherwise by any court.

9.      Nothing contained in this Interim Order shall be deemed a finding with respect to the sufficiency of the adequate protection (as that term is defined in section 361 of the Bankruptcy Code) of the interests of Senior Creditors or prejudice the right of Senior Creditors to request adequate protection in addition to that provided under the terms of this Interim Order. Furthermore, nothing contained in this Interim Order shall prejudice the right of Senior Creditors to seek relief from the automatic stay or the dismissal or conversion of the Chapter 11 Cases.

---

[3] Agent and Senior Lenders reserve the right to charge and collect interest, including default interest, at the rates set forth in the Loan Documents.

10.     Upon request of the Agent to access its pre-petition Collateral or post-petition collateral, not less than five (5) business days in advance to the Debtors, the Debtors shall grant access, during normal business hours, to the Debtors' records, business premises, and the Collateral to enable Agent or its agents to (a) review, appraise, inspect, and evaluate the Collateral, and (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business.  The Debtors shall fully cooperate with the Agent and its agents regarding any such reviews, evaluations, inspections and appraisals.

11.     The Debtors shall supply to the Agent not later than five (5) business days after the Court's entry of this Interim Order and thereafter as soon as possible following Agent's request in its sole and reasonable discretion the following or as otherwise to be provided as set forth below:

    a.  all financial information and other information relating to the Debtors' operations or any of the Collateral requested by Agent;

    b.  an accounting of all Cash Collateral actually spent by the Debtors since the Petition Date in comparison to the projected expenditures set forth in the Budget, including a line-item, side-by-side comparison of the amounts actually spent within the corresponding projected expense categories contained in the Budget, which shall be delivered to Agent by not later than Tuesday of each week following entry of this Interim Order;

    c.  as and when filed, all reports and other documents and pleadings filed by the Debtors with the Bankruptcy Court;

    d.  a weekly cash flow statement in a form consistent with the Budget by not later than Tuesday of each week following entry of this Interim Order, comparing

Debtors' actual receipts and disbursements for the prior week to the projected receipts and disbursements set forth in the Budget;

e.   all reporting requirements under the terms of the Loan Documents;

f.   a reporting of same store sales within three (3) business days of the end of each month;

g.   a list of any locations opened or closed during the prior week, delivered to Agent by not later than Tuesday of each week following entry of this Interim Order;

h.   "Management Monthly Report" in a form similar to that previously provided to the Senior Lenders, including monthly and year-to-date financial statements (income statement, balance sheet and cash flow), statement of restaurant-level earnings for period-to-date and year-to-date, Management discussion and analysis of current period an year-to-date results and summary of key performance indicators for the period and year-to-date results. The Management Monthly Report will be delivered to Agent by not later than the fifteenth day of each month and

i.   all other information requested by the Agent or any of the Senior Lenders.

12.    The Debtor shall timely file all required reports and make all required payments due to the U.S. Trustee during the pendency of the Chapter 11 Cases.

13.    Any provision of this Interim Order to the contrary notwithstanding, the Cash Collateral may be used for payment of the following (the "Carve-Out"):  (a) allowed professional fees and disbursements of Debtors' professionals incurred on or prior to receipt by Debtors of written notice of the occurrence of a Termination Event (i) by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a) and (ii) by professionals retained, pursuant

to Bankruptcy Code sections 327 or 1103(a), by the Committee, if any, in an amount not to exceed the aggregate amount of $50,000, (b) allowed professional fees and disbursement incurred following receipt by Debtors of a notice of the occurrence of a Termination Event by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Debtors and the Committee not to exceed the aggregate amount of $250,000, and (c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, no Cash Collateral or any portion of the Carve-Out may be used to assert any claims or causes of action against the Senior Creditors or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, or enforceability of the Obligations, the Pre-Petition Liens, or the Replacement Liens granted herein; provided, however, that up to $25,000 may be used by the Committee, if any, to investigate any such claims or causes of action.

14. **The stipulations contained in paragraph E of this Interim Order shall be binding upon all parties in interest, including without limitation, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estates and the Committee, if any, and all parties in interest, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estates and the Committee, if any, are deemed to have irrevocably waived and relinquished all claims and right to challenge any of the stipulations in such paragraph E, unless (a) the Committee (or, if no Committee is appointed, a party in interest other than the Debtors) has filed an adversary proceeding or contested matter (subject to the limitation set forth in the last sentence of paragraph 13 of this Interim Order) challenging the validity, enforceability, or priority of the Obligations or the Pre-petition Liens or otherwise asserting any claims or causes of action against the Agent or**

any other Senior Creditors on behalf of the Debtors' estates (a "<u>Challenge Action</u>"), no later than sixty (60) days from the date of the appointment of a Committee or, if no Committee is formed, seventy-five (75) days after the entry of this Interim Order (the "<u>Challenge Deadline</u>") and (b) the Court rules in favor of the plaintiff in any such adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, the Obligations shall constitute allowed claims, in the amount set forth herein, not subject to subordination and otherwise unavoidable, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, the Pre-petition Liens on the  Collateral shall be deemed legal, valid, binding, perfected, and first-priority liens not subject to subordination and otherwise unavoidable, and the Obligations and the Pre-petition Liens on the  Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto.   If any such adversary proceeding or contested matter is commenced on or prior to the Challenge Deadline, the stipulations contained in paragraph E of this Interim Order shall nonetheless remain binding and preclusive except to the extent that such stipulations were expressly challenged in such adversary proceeding or contested matter, subject to such adversary proceeding or complaint being amended.  Nothing in this Interim Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any cause of action belonging to the Debtors or their estates.

15.    Each of the following shall constitute a "<u>Termination Event</u>" under this Interim Order:

a.     Failure of Debtors to abide by the terms, covenants, and conditions of this Interim Order or the Budget;

b.     The use of Cash Collateral for any purpose not authorized by this Interim Order;

c.     Failure of Debtors to timely pay fees of the U.S. Trustee;

d.     Appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers;

e.     Termination of Debtors' franchise agreements with Applebee's Restaurants LLC, Applebee's Franchisor LLC, or any of their respective affiliates;

f.     Conversion of the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code;

g.     The Chapter 11 Cases are dismissed;

h.     The entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of this Interim Order; or

i.     Debtors seek to obtain financing that does not satisfy the Obligations in full that seeks to prime Agent's lien on any of the Collateral.

16.     Upon Debtors' receipt of notice of the occurrence of  a Termination Event, Debtors are prohibited from using the Cash Collateral until further order of this Court other than as set forth in this Interim Order.

17.     Where required, notice shall be provided to Debtors and Debtors' counsel via email, facsimile, U.S. Mail or overnight delivery service as follows, and shall be effective when deposited or transmitted:

**Debtors:**

c/o RMH Franchise Holdings, Inc.
2021 Pine Lake Road #100
Lincoln, NE 68512
Attention:     Mitchell Blocker
Email:          mblocher@rmhfranchise.com

**with a copy to:**

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attention:     M. Blake Cleary, Esq.
                    Kenneth Enos, Esq.
Email:          bcleary@ycst.com
                    kenos@ycst.com

18.     If any or all of the provisions of this Interim Order are modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Interim Order prior to such stay, modification, or vacation.  The reversal or modification on appeal of any or all of the provisions of this Interim Order shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Interim Order.

19.     Any post-petition payments made by Debtors to Agent shall be applied to the indebtedness in accordance with the Loan Documents, subject to reapplication or redirection of such funds in a manner directed by the Court in accordance with the Bankruptcy Code.  The automatic stay of section 362 of the Bankruptcy Code is hereby lifted to allow Agent to effectuate the terms of this paragraph.

20.     Effective upon entry of the Final Order and the expiration of the Challenge Deadline without the commencement of a Challenge Action, the Debtors and their respective estates (each a "Releasor" and collectively, the "Releasors") hereby release, forever discharge

and acquit Agent, each of the Senior Lenders, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "Releasees") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "Pre-Petition Released Claims") of every kind, name, nature, and description (other than claims based on gross negligence or willful misconduct, which shall not be released until entry of the Final Order providing for such releases), whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against any of the Releasees arising at any time prior to the entry of this Interim Order (including, without limitation, claims relating to the Loan Documents, and other documents executed in connection therewith, and the obligations thereunder).

21.     Senior Creditors' consent to this Interim Order shall not constitute a waiver of any of their rights whatsoever and nothing contained herein shall be deemed a waiver of the right of the Senior Creditors to:

    a.  Consent or decline to consent to any extension of the use of Cash Collateral; or

    b.  Pursue any other right or remedy available to them under the Bankruptcy Code or otherwise, including, without limitation, the right to seek, or to oppose, relief from the automatic stay, the right to seek, or to oppose, adequate protection, or any rights on account of any prior or prospective unauthorized uses of Cash Collateral.

22.     The failure of Agent or any of the Senior Lenders to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Loan Documents or otherwise, as

applicable, shall not constitute a waiver of any of Agent's or any of the Senior Lenders' respective rights hereunder, thereunder or otherwise.

23.     Nothing contained in this Interim Order shall be deemed to terminate, modify, or release any obligations of any non-debtor with respect to its obligations under any of the Loan Documents.

24.     Debtors' ability to use Cash Collateral under this Order shall terminate on the earlier of:  (i) June 9, 2018 at 5:00 p.m. eastern, (ii) the occurrence of a Termination Event, and (iii) entry of a final or additional interim order regarding Cash Collateral.

25.     The Senior Creditors do not consent to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent or Senior Lenders.

26.     Notwithstanding Bankruptcy Rule 4001(a)(1), this Interim Order is not stayed and shall be effective upon the date of its entry on the docket.

27.     The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Interim Order.

28.     Debtors are authorized, and hereby ordered, to pay quarterly fees to the United States Trustee.

29.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

30.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

01:23187736.2

31.     The Final Hearing will be held on June 6, 2018, at 10:30 a.m. (ET).  The Debtors shall, on or before May 14, 2018, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court and to counsel for the Committee (if any) and any other statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102.  The notice of entry of this Interim Order shall state that any party in interest objecting to the entry of the Final Order authorizing the use of Cash Collateral shall file written objections with the United States Bankruptcy Court Clerk for the District of Delaware no later than 4:00 p.m. (ET) on May 30, 2018, and objections shall be served so that the same are received on or before such date to: (a) YOUNG CONAWAY STARGATT & TAYLOR, LLP, Attn: M. Blake Cleary and Kenneth Enos, Rodney Square, 1000 North King Street, Wilmington, DE 19801, proposed counsel for the Debtors; (b) MORRIS, MANNING & MARTIN, LLP, Attn: Frank W. DeBorde and Lisa Wolgast, 1600 Atlanta Financial Center, 3343 Peachtree Road NE, Atlanta, GA 30326, counsel for the Agent, and BUCHANAN INGERSOLL & ROONEY PC, Attn: Geoffrey G. Grivner, 919 North Market Street, Suite 1500, Wilmington, DE 19801, local counsel for the Agent; (c) THE OFFICE OF THE UNITED STATES TRUSTEE, Attn. Juliet Sarkessian, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and (d) counsel for the Committee, if any.

Dated:_____, 2018          _____
        Wilmington, Delaware                                LAURIE SELBER SILVERSTEIN
                                                            UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**BUDGET**

**[TO BE FILED]**