## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RMH FRANCHISE HOLDINGS, INC., *et al.*,[1] | Case No. 18-11092 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Requested Hearing Date**: June 6, 2018 at 10:30 a.m. (ET) |
| | **Requested Objection Deadline**: June 5, 2018 at 11:00 a.m. (ET) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 363 AND 503 OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO MAKE POST-PETITION SEVERANCE PAYMENTS TO NON-INSIDER EMPLOYEES IN ACCORDANCE WITH THE DEBTORS' PRE-PETITION SEVERANCE PROGRAM

RMH Franchise Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move the Court (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), authorizing, but not directing, the Debtors, to make certain post-petition severance payments to non-insider employees in accordance with the Debtors' pre-petition severance program. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: RMH Franchise Holdings, Inc. (7150); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); RMH Franchise Corp. (1807); Contex Restaurants, Inc. (0710). The headquarters for the above-captioned Debtors is located at One Concourse Parkway, N.E., Suite 600, Atlanta, GA 30328.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "Amended Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States District Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105(a), 363, and 503 of the Bankruptcy Code.

## BACKGROUND

**A.      General Background**

2.      On May 8, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  The Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 1015-1.  On the date hereof, an official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases.

3.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of

the Chapter 11 Cases can be found in the *Declaration of Mitchell S. Blocher In Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 24].

**B.    Relevant Background**

4.    Prior to the Petition Date, in the normal course of business, the Debtors offered severance to certain of their employees (collectively, the "Eligible Severance Employees")in connection with closing restaurant locations and reductions in force related to cost-cutting measures (the "Severance Program").[2]

5.    The Debtors do not have a formal, standardized policy for the Severance Program. Rather, the Severance Program is administered, in the Debtors' discretion, with the goals of, among other things, compensating the Debtors' employees for economic disruption following their termination of employment, and ensuring that the employees continue to work through their anticipated termination date.    Pursuant to the Severance Program, terminated employees generally receive a severance payment equivalent to a certain number of weeks of their gross wages, less appropriate taxes, other legally required withholdings and deductions, and any amounts due from the employees to the Debtors, in exchange for executing a signed release agreement and a commitment to continue working through their anticipated termination date. For example, in the past, depending on their position with the Debtors, certain of the Eligible Severance Employees have typically received two (2) weeks of their gross wages, whereas others have generally received one (1) week of their gross wages per year of service with the Debtors,

---

[2]    Pursuant to the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation, (B) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (C) Authorizing Payment of Reimbursement to Employees for Expenses Incurred Prepetition, (D) Authorizing Payment of Withholding and Payroll-Related Taxes, (E) Authorizing Payment of Workers' Compensation Obligations, and (F) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers* [Docket No. 48] (the "Employee Wages Motion"), the Debtors are seeking approval of certain employee bonus programs, including for certain, but not all, of the Eligible Severance Employees.

with a cap on the maximum number of weeks in certain instances.  In addition, as part of the Severance Program, certain of the Eligible Severance Employees have been paid their earned and unused vacation time ("Accrued PTO"), whereas others have only been paid Accrued PTO where required by state law.

6.      The Debtors, in consultation with their professional advisors, have recently determined that they anticipate closing certain underperforming restaurant locations in the next approximately 30 days (collectively, the "Closing Locations").  As a result of these anticipated closings and related cost-cutting measures, the Debtors expect that unfortunately the employment of certain of the Eligible Severance Employees will be terminated.  In connection with the anticipated closing of the Closing Locations and the related cost-cutting measures, the Debtors believe that it is necessary, prudent and in the best interests of the Debtors and their estates to continue the Severance Program and to make post-petition severance payments to the Eligible Severance Employees, all of whom are non-insiders of the Debtors (collectively, the "Ordinary Course Severance Payments").

7.      Given that the Debtors maintained and administered the Severance Program prior to the Petition Date, and that the Eligible Severance Employees are not insiders of the Debtors, the Debtors believe that their continuation of the pre-petition Severance Program on a post-petition basis is an ordinary course transaction that does not require Court approval.  However, given the nature of the relief requested and, out of an abundance of caution, the Debtors seek Court approval.  Furthermore, in light of the unanticipated nature of the Debtors' chapter 11 filings, the Debtors did not have an opportunity to include the relief requested in the Employee Wages Motion.

8.      Based on the Debtors' anticipated timing for closing the Closing Locations and the related cost-cutting measures, it is critical that the Debtors obtain authority, at the June 6, 2018 hearing (the "June 6th Hearing") in the Chapter 11 Cases, to continue the Severance Program and make the Ordinary Course Severance Payments.  As a result, contemporaneously with the filing of this Motion, the Debtors have filed a motion pursuant to Local Rule 9006-1(e), shortening the time for notice for this Motion so that it may be heard at the June 6th Hearing, along with the Court's consideration of the Employee Wages Motion on a final basis.  As with the relief requested in the Employee Wages Motion, the Debtors believe that the relief requested herein is necessary to ensure that the Debtors maintain a reliable and loyal workforce, which is integral to the Debtors' efforts to successfully prosecute the Chapter 11 Cases.

9.      The Debtors do not believe that they have any outstanding pre-petition obligations on account of the Severance Program, and therefore are not seeking approval pursuant to this Motion to make any such payments.  Rather, solely with respect to the Closing Locations and the related cost-cutting measures, the Debtors are seeking approval only to make post-petition severance payments, to non-insider employees, subject to the execution of a severance and release agreement.

10.     The Debtors anticipate that, in the aggregate, the Ordinary Course Severance Payments made pursuant to this Motion would not exceed approximately $700,000.  Of this amount, approximately $100,000 consists of Accrued PTO.

11.     Given that the Debtors are shortening notice for the June 6th Hearing, in the event that the Debtors decide that it is in their bests interests to close restaurant locations other than the Closing Locations and to take any cost-cutting measures unrelated to the Closing Locations, to the extent necessary, the Debtors will seek appropriate relief with respect to the Severance

Programs for those locations and those measures at that time, and reserve all of their rights in connection therewith.

## RELIEF REQUESTED

12.    By this Motion, the Debtors request the Court to enter the Proposed Order, authorizing (but not directing) the Debtors to continue the Severance Program and make the Ordinary Course Severance Payments to the Eligible Severance Employees (i.e., non-insider employees) in the ordinary course of business, and to enter into severance and release agreements in connection therewith.

## BASIS FOR RELIEF

### I.    Payment of the Ordinary Course Severance Payments Qualifies as a Transaction in the Ordinary Course of the Debtors' Business

13.    The Debtors' payment of the Ordinary Course Severance Payments falls within the "ordinary course of business" standard of section 363(c)(1) of the Bankruptcy Code.  This Circuit has applied the two-part test adopted in *In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992), for purposes of determining whether an employee compensation plan or program falls within the ordinary course of a debtor's business.[3]  In *Roth*, the Court applied a vertical dimension and a horizontal dimension test for purposes of determining whether a transaction was considered "ordinary course."[4]  Under the "vertical" test, the Court looks to the reasonable expectations of interested parties as to the types of transactions a debtor is likely to enter into the ordinary course of business.[5]  The relevant inquiry under the "vertical" test is whether the proposed plan or program is consistent with the Debtors' pre-petition business practices and

---

[3]  *See, e.g., Nellson Nutraceutical*, 369 B.R. 787, 797 (Bankr. D. Del. 2007).

[4]  *See Roth*, 975 F.2d at 953.

[5]  *Id.*

conduct.[6]  The relevant inquiry under the "horizontal" test, on the other hand, is whether the proposed transaction "is of the sort commonly undertaken by companies in that industry."[7]

14.     As described above, prior to the Petition Date, the Severance Program was maintained and administered to, among other things, compensate the Eligible Severance Employees for economic disruption following their termination of employment, and ensure that the employees continue to work through their anticipated termination date.  In light of this, although not legally entitled to such payments, the Eligible Severance Employees have come to expect that the Debtors will offer them severance to the extent that they are terminated in connection with a restaurant closing or other cost-cutting measures.  Because the Ordinary Course Severance Payments are consistent with the Debtors' pre-petition business practices, and simply represent the continuation of a pre-petition employee practice, the vertical test is satisfied here.

15.     In addition, the Debtors and their professional advisors believe that severance programs and payments, such as the Severance Program and the Ordinary Couse Severance Payments, are commonplace in the Debtors' industry and similar industries.  Also, based upon the general knowledge of the Debtors' management of prevailing practices in the Debtors' industry and similar industries, the Debtors believe that the Severance Program and the Ordinary Course Severance Payments are generally in line with industry norms.  As a result, the horizontal test is satisfied with respect to the relief requested herein.

---

[6] *Id.*

[7] *Id.* at 953.

II.    **Continuation of the Severance Program Is a**
       **Reasonable Exercise of the Debtors' Business Judgment**

16.    Were this Court to find that the Debtors' payment of the Ordinary Course Severance Payments is not ordinary course, the Court should nevertheless approve payment under section 363(b) of the Bankruptcy Code, which authorizes the Debtors to "use . . . other than in the ordinary course of business, property of the estate" after notice and a hearing.[8]  Courts routinely hold that transactions should be approved under section 363(b) when they are supported by the reasonable business judgment of the debtor's management.[9]  *See, e.g., In re Martin*, 91 F.3d at 395 (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); and *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (same).  The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."[10]

17.    Historically, courts have approved employee compensation plans and programs that are outside the ordinary course of business pursuant to section 363(b)(1) of the Bankruptcy

---

[8]  11 U.S.C. § 363(b)(l).  In addition, section 105(a) of the Bankruptcy Code provides in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

[9]  The business judgment rule has ongoing vitality in chapter 11 cases.  *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-616 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

[10]  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

Code when (a) a debtor has used proper business judgment in formulating such a program, and (b) the court finds that the program is fair and reasonable.[11]

18.     The Debtors' decision to continue the Severance Program and to make the Ordinary Course Severance Payments on a post-petition basis is supported by sound business reasons and was made in good faith.  The Ordinary Course Severance Payments are reasonable in light of, among other things, the importance of the Eligible Severance Employees to the Debtors' business operations and their chapter 11 efforts, as well as the expectations of the Eligible Severance Employees—and the Debtors' employees as a whole—that, consistent with past practice, the Debtors would offer severance payments to employees terminated as a result of the Debtors closing restaurant locations and taking related cost-cutting measures.

19.     Payment of the Ordinary Course Severance Payments will avoid impairing employee morale at a critical time, and ensure that the all of the Debtors' employees, including the Eligible Severance Employees, remain focused and committed to the Debtors and their customers.  Providing terminated employees with reasonable severance packages will ensure that all of the Debtors' employees will continue to work towards achieving a successful prosecution of the Chapter 11 Cases, and providing the Debtors' customers with the high quality dining experience that they have come to expect.

20.     Simply put, continuing the Severance Program and making the Ordinary Course Severance Payments subsequent to the Petition Date will ensure that the Debtors avoid damaging

---

[11]   *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. at 155 (affirming bankruptcy court approval of the key employee retention program on the basis that debtors showed a "sound business purpose" justifying such approval); *In re Global Home Prods., LLC*, 369 B.R.778, 783-84  (Bankr. D. Del. 2007) ("Compensation issues are normally governed by the business judgment standards, i.e., proof that there is a broad business purpose for an action…The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment.") (citations omitted); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (applying business judgment rule to find that debtor's long term incentive plan was within the fair and reasonable business judgment of the debtor).

employee morale and performance at a critical time for the Debtors and their estates.  It is also a

sign of good faith to not only the Eligible Severance Employees that might be terminated, but

also to all of the Debtors' other employees.  It cannot be reiterated enough that, as set forth in the

Employee Wages Motion, maintaining a positive relationship with the Debtors' employees is a

key to the success of the Debtors' business and the Chapter 11 Cases.

21.     For these reasons, the requested relief is in the best interests of the Debtors, their

estates, and creditors and all parties in interest, and a prudent exercise of the Debtors' business

judgment.

### III.    The Relief Requested Herein Neither Implicates Nor Runs Afoul of Section 503(c) of the Bankruptcy Code

22.     In the context of employee compensation plans and programs, particularly with

respect to insiders, consideration must typically be given to section 503(c) of the Bankruptcy

Code.  Section 503(c) has three key provisions.  Sections 503(c)(1) and (c)(2) of the Bankruptcy

Code prohibit retention and severance payments, respectively, to "insiders" as administrative

claims during chapter 11 cases absent certain specific findings.[12]  Because the Eligible Severance

Employees are, without question, *not* insiders of the Debtors, sections 503(c)(1) and (c)(2) of the

Bankruptcy Code do not apply to the requested relief.[13]

23.     Section 503(c)(3) of the Bankruptcy Code, meanwhile, applies both to insider and

non-insider employees, and prohibits transfers "outside the ordinary course" that are not justified

by the "facts and circumstance" of the case.[14]  As discussed above, the Debtors believe that their

---

[12]  *See* 11 U.S.C. §§ 503(c)(1) & (c)(2).

[13]  The Eligible Severance Employees do not have authority to make company-wide decisions, do not report to the Debtors' President, Chief Financial Officer or Board, and do not attend Board meetings.  Furthermore, their duties do not extend to the Debtors' restaurants or business operations as a whole.  In short, while the Eligible Severance Employees play a valuable role in the Debtors' organization, none of the Eligible Severance Employees take part in the direction or management of the Debtors' overall business operations.

[14]  11 U.S.C. § 503(c)(3); *see also In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006).

continuation of the Severance Program and payment of the Ordinary Course Severance Payments on a post-petition basis is an ordinary course transaction.

24.     Nevertheless, to the extent that section 503(c)(3) of the Bankruptcy Code is applicable to the relief requested herein, the standard for approving payments under section 503(c)(3) is essentially the same "business judgment" standard for approving transactions under section 363(b)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 804 (Bankr. D. Del. 2007); *In re Global Home Prods., LLC*, 369 B.R. 778, 787 (Bankr. D. Del. Mar. 6, 2007); *In re Nobex Corp.*, No. 05-20050, 2006 Bankr. LEXIS 417, at *7-9 (Bankr. D. Del. 2006).  Indeed, as stated in *In re Nobex Corp.*:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside the ordinary course of business . . . . I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case . . . . I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside the ordinary course of business and that [are] based on the business judgment of the debtor.

Transcript of Hearing, 86:11-87:2 (Jan. 12, 2006).  Accordingly, the business judgment standard applies, and for all of the reasons set forth above, the Debtors respectfully submit that the section 503(c)(3) standard, if applicable, is met under the facts and circumstances of the Chapter 11 Cases, as the relief requested is a valid exercise of the Debtors' business judgment.

25.     In light of the foregoing, the Debtors submit that their continuation of the Severance Program and payment of the Ordinary Course Severance Payments to the Eligible Severance Employees, as provided for herein, is in the best interests of the Debtors and all of their stakeholders, and an appropriate exercise of the Debtors' business judgment.

## NOTICE

26.    The Debtors have provided notice of this Motion via overnight delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for Bank of America, N.A., as Administrative Agent, Collateral Agent and Letter of Credit Issuer; (iii) counsel for the Committee; and (iv) those parties that, as of the filing of this Motion, have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    Wilmington, Delaware
          May 24, 2018

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
M. Blake Cleary (No. 3614)
Kenneth J. Enos (No. 4544)
Robert F. Poppiti, Jr. (No. 5052)
Justin H. Rucki (No. 5304)
Jordan E. Sazant (No. 6515)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1256

*Proposed Counsel for the Debtors
and Debtors in Possession*