**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RMH FRANCHISE HOLDINGS, INC., *et al.*,[1] | Case No. 18-11092 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 618** |
| | **Hearing Date: November 19, 2018 at 10:00 a.m. (ET)**<br>**Objection Deadline:  November 9, 2018 at 4:00 p.m. (ET)** |

**OBJECTION OF CHAMORA IVERY, FOR HERSELF AND ON**
**BEHALF OF THOSE SIMILARLY SITUATED, TO CONFIRMATION**
**OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION**

Chamora Ivery, on behalf of herself and all others similarly situated ("Collective Members") hereby objects to confirmation of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

## INTRODUCTION

1.      Collective Members object to confirmation of the Plan because it assigns no value to the wage priority and administrative portions of Collective Members' claims.  These claims are valued at approximately $1.2 million and $1.75 million (and continuing to accrue), respectively.  The Plan does not provide sufficient funds or a plausible mechanism to satisfy the claims.  As such, the Plan is not feasible.

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  RMH Franchise Holdings, Inc. (7150); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); RMH Franchise Corporation (1807); Contex Restaurants, Inc. (0710).  The headquarters for the above-captioned Debtors is located at One Concourse Parkway, N.E., Suite 600, Atlanta, GA 30328.

## LEGAL AND FACTUAL BACKGROUND

I.    **District Court Litigation**

2.    On March 1, 2017, Plaintiff Ivery filed a class and collective action complaint against Debtors RMH Franchise Corp., RMH Illinois, LLC, and RMH Franchise Holdings, Inc., alleging that they misclassified her and other similarly situated assistant managers as exempt from the overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and analogous state law provisions, thereby commencing a case captioned as *Ivery et al. v. RMH Franchise Corp. et al.*, 17-cv-1619 (N.D. Ill.) (JJT) (the "District Court Litigation").[2]

3.    The FLSA provides an avenue for collective resolution of claims for similarly situated employees through a notice and opt-in procedure. *See* 29 U.S.C. § 216(b). The District Court certified a collective action pursuant to 29 U.S.C. § 216(b),[3] and 398 individuals joined the case.

4.    Before and after conditional certification, the parties exchange substantial discovery. The Debtors deposed Plaintiff Ivery on August 15, 2017, in connection with her motion for certification of a collective. Plaintiff Ivery also responded to 20 interrogatories, 15 requests for admissions, and 51 requests for production of documents. The parties negotiated a protocol for discovery of electronically stored information, and Debtors produced more than 69,000 pages of documents, as well as employment data for all Collective Members.

5.    The District Court Litigation was stayed by the filing of the Chapter 11 petitions.

---

[2] *See* Ex. A (operative complaint in the District Court Litigation)
[3] *See* Ex. B (Order granting Plaintiff's conditional certification motion in part and granting Defendants' partial motion to dismiss without prejudice)

II.     **Legal Claims**

    A.     **Debtors Are Liable for Unpaid Overtime Wages**

6.     Exemptions to overtime coverage under the FLSA are affirmative defenses, and it is the employer's burden to prove them.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006).

7.     Based on discovery exchanged in the District Court Litigation, it is evident that the Debtors will not be able to prove that the Collective Members are exempt "executives" or "administrators."

8.     An executive must have "management of the enterprise" as his or her "primary duty."  29 C.F.R. § 541.l00(a).  An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  It must be assessed based on all the facts "with the major emphasis on the character of the employee's job as a whole."  *Id.*  Relevant factors are: (1) the relative importance of the exempt duties compared with other duties; (2) the amount of time spent on exempt work versus non-exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to nonexempt workers.  *Id.*

9.     Here, Collective Members spend the vast majority of their time performing the same work as non-exempt hourly employees, including greeting and seating customers; cooking, preparing, and serving food and drinks; bussing tables, washing dishes, sweeping, cleaning restrooms, and taking garbage out; unloading delivery trucks, stocking supplies, and counting inventory; and performing general customer service duties.[4]

---

[4]     Ex. C (Ivery Decl.) ¶ 6: Ex. D (Siebenaller Decl.) ¶ 6.

10.     Discovery has confirmed that assistant managers' work is governed by detailed checklists and procedures which constrain their discretion for the limited managerial work they perform; and that general managers and district managers make the significant decisions for the restaurant and supervise assistant managers' work.

11.     The Debtors will likewise not be able to prove that the Collective Members are exempt "administrators."  An "administrator" must have as his or her "primary duty" the "performance of office or non-manual work directly related to the management or general business operations of the employer" and his or her primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 901 (3d Cir. 1991).

12.     Here, Collective Members are not exempt because they are classic "production" workers whose primary duties are food production and customer service work.  *See Martin*, 940 F.2d at 901; *Karali v. Branch Banking & Tr. Co.*, No. 16 Civ. 2093, 2018 WL 4676073, at *7 (D.N.J. Sept. 28, 2018); *Hickton v. Enter. Rent-a-Car Company*, No. 07 Civ. 1687, 2012 WL 4356762, at *17 (W.D. Pa. Sept. 24, 2012).

**B.    Debtors Are Liable for Liquidated Damages**

13.     The FLSA requires employers who have violated its wage requirements to pay the unpaid wages (generally time and a half) and an equal amount in liquidated damages.  *See* 29 U.S.C. § 216(b).  An employer "can avoid liquidated damages only if it 'shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith.'"  *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 614 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 259).  To establish good faith, an "employer must show that [it] took affirmative steps to

ascertain the Act's requirements, but nonetheless, violated its provisions." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991).

14.     The employer's burden in proving the "good faith" defense is a "difficult one to meet." *Id.* (citation omitted).  Indeed, "[d]ouble damages are the norm, single damages the exception." *Id.*  In all events, the claimants need not demonstrate Debtors' lack of good faith, rather the burden is on the Debtors to demonstrate their good faith.  29 U.S.C. § 260; *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 36 (1st Cir. 2007) (upholding award of liquidated damages even where plaintiff failed to offer any evidence of willfulness).

### C.    <u>Collective Members Worked a Substantial Number of Overtime Hours</u>

15.     Where, as here, an employer has not kept accurate records of hours worked, the employees are entitled to establish their damages by their best estimate.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (reaffirmed by the Supreme Court in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)).  "An employee satisfies the burden of proof if he or she produces enough evidence to permit a court to make a 'fair and reasonable' inference that the employee performed work for which he or she received improper compensation." *Rong Chen v. Century Buffet & Rest.*, No. 09 Civ. 1687, 2012 WL 113539, at *6 (D.N.J. Jan. 12, 2012) (quoting *Anderson*, 328 U.S. at 687).  "A plaintiff's sworn testimony in and of itself is sufficient to meet the 'just and reasonable inference' standard." *Crisostomo v. Exclusive Detailing, Inc.*, No. 08 Civ. 1771, 2010 WL 2640183, at *4 (D.N.J. June 28, 2010).

16.      Testimonial evidence establishes that assistant managers regularly worked 50 to

70 hours per week.[5]  This is in line with the employer's own estimates (on job descriptions) that

assistant managers are required to work at least 55 hours per week.[6]

## III.    Collective Members' Master Proofs of Claim

17.      On August 31, 2018, Collective Members and Debtors stipulated to the filing of

master proofs of claim for the convenience of the parties.  D.I. 517; 743.  On that same date,

Collective Members filed proofs of claim against each of the Debtors.  In the aggregate, the

Collective Members asserted claims for $1,214,764.83 in priority wage damages earned in the

180 days prior to the petition date pursuant to 11 U.S.C. § 507(a)(4) (individually capped at

$12,850) and $22,907,261.07 in general unsecured claims for damages in excess of priority and

earned outside of the priority period.  *See* D.I. 620 p. 14.

18.      These claims were calculated based on a conservative estimate of 16 overtime

hours per workweek, subject to a 15% reduction to account for workweeks involving holidays.

The overtime damages were then doubled to include the FLSA's liquidated damages.

19.      The Debtors have not objected to the claims.  Accordingly, they represent *prima

facie* evidence of the validity and amount of the claims.  Fed. R. Bankr. P. 3001(f).

## IV.    Collective Members' Administrative Claims

20.      Seventy-six Collective Members were employed by the Debtors as of the petition

date.  The Debtors have not changed their practices regarding the classification of assistant

managers as exempt from the FLSA overtime provisions.  The Debtors have been advised that

the Collective Members intend to file administrative claims for post-petition unpaid overtime

---

[5]      Ex. C (Ivery Decl.) ¶ 5 (50-60 hours per week); Ex. D (Siebenaller Decl.) ¶ 5 (55-70 hours per week).

[6]      *See* Ex. E (Assistant Manager – Job Description).

totaling over $1,500,000 on October 22, 2018, which continue to accrue for those Collective

Members who are still employed by the Debtors as assistant managers.

21.    Unpaid wage claims that accrue post-petition are administrative expenses.  *See In

re Powermate Holding Corp.*, 394 B.R. 765, 778 (Bankr. D. Del. 2008); *see also* 11 U.S.C. §

503(b)(1)(A)(ii) (allowed administrative expenses shall include, "wages and benefits awarded

pursuant to a judicial proceeding . . . as back pay attributable to any period of time occurring

after commencement of the case under this title, as a result of a violation of Federal or State law

by the debtor[.]").  Likewise, the compensatory liquidated damages are entitled to treatment as

an administrative expense.  *See, e.g., In re Metro Fulfillment, Inc.*, 294 B.R. 306, 312 (9th Cir.

2003) (penalty wages are an administrative expense); *In re Hanlin Grp., Inc.*, 176 B.R. 329, 334

(Bankr. D.N.J. 1995).

22.    In spite of this, the Plan values the FLSA claims of the Collective Members at $0.

D.I. 620 p. 25 (estimated $0 in allowed Other Priority Claims); *id.*, at 150; Ex. 4, p. 8

(Liquidation Analysis) (Priority Unsecured Claims "exclude the approximately $1,200,000

priority claim asserted against the Debtors' estates on account of the FLSA Collection Action,

which the Debtors believe is without merit and will ultimately be disallowed.").  It provides for

no reserve to account for payment of these claims and does not provide for adequate funds to be

available to satisfy these claims.

## ARGUMENT

23.    The Plan is not feasible because it does not provide for Collective Members'

administrative and priority claims, and there is a significant funding gap between the claims that

must be paid and the Debtors' plan to pay them.

I.      **The Plan Does Not Set Aside Sufficient Funds to Satisfy the Collective Members' Administrative and Priority Claims.**

24.     In order to confirm a plan of reorganization, the plan proponent must comply with the requirements of 11 U.S.C. § 1129.  Section 1129 requires, *inter alia*, that that priority and administrative claims be paid in full, 11 U.S.C. § 1129(a)(9), and that any plan of reorganization be feasible, 11 U.S.C. § 1129(a)(11).  Where a plan does not contain sufficient means to pay priority claims in full, it is not feasible.  *See In re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007) (bankruptcy court erred in confirming plan where it did not consider impact of appeal of conditionally disallowed claim on plan feasibility); *In re Holmes*, 301 B.R. 911, 915 (Bankr. M.D. Ga. 2003) (chapter 11 plan not feasible where debtor merely hoped to compromise IRS claim and "[d]ebtor does not have the ability to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months as proposed in his Chapter 11"); *In re Thornhill*, 268 B.R. 570, 573 (Bankr. E.D. Cal. 2001) (chapter 13 plan not feasible where it did not provide for payment of priority and secured claims in full).

25.     Here, as required by Section 1129(a)(9), the Plan provides that "each holder of an Allowed Other Priority Claim against any of the Debtors shall receive Payment in Full in Cash with Post-Petition Interest where required under applicable law."  D.I. 618 p. 19.  It also provides that "each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Claim."  *Id.* at 15.  However, although the Plan *provides* for priority and administrative claims to be paid in full, it does not contain sufficient means to accomplish this.

26.     The Collective Members understand that the Plan appears to contemplate the payment of only approximately $1.8 million to unsecured creditors.

27.     The total priority and administrative claims of the Collective Members is more than $3.9 million, and the administrative claims continue to accrue as Collective Members continue to work overtime.[7]

28.     The Plan does not contemplate any payment on account of these claims and instead merely indicates that the Debtors expect to prevail.

29.     As discussed above, the evidence uncovered during the District Court Litigation demonstrates that the Debtors are unlikely to prevail.

30.     Regardless, the fact that Debtors hope that they will prevail does not make the Plan feasible.

## II.     The Reorganized Debtors Will Not Have Sufficient Funds to Pay the Claims.

31.     The Plan provides that no payments shall be made on account of Disputed Claims, D.I. 618 p. 33.

32.     The Collective Members object to the Plan's definition of "Disputed" to include proofs of claim for which the Debtors or the Reorganized Debtors, as applicable, retain the ability to interpose a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, this Plan and the Confirmation Order.  This definition is inconsistent with the provisions of 11 U.S.C. § 502(a).

33.     But, even if the claims are considered Disputed as of the Effective Date of the Plan, there is no indication that the Reorganized Debtors will ever have sufficient cash to pay the claims without jeopardizing their business operations.

---

[7] Collective members also object protectively to section 8.02 of the Plan ("Estimation of Claims") to the extent that this provision purports to alter the requirements of 11 U.S.C. § 502(c) or otherwise expand the applicability of that Code section.

34.     The Plan provides for a Minimum Liquidity Requirement of $5 million as of the effective date.  *See* D.I. 620 p. 9.  Much of these funds, however, appear to be earmarked for the payment of other cash payments that must be made on confirmation.  *Id.* ("The Debtors expect to have sufficient liquidity from Cash on hand as of the Effective Date, the Plan Sponsor Cash Payment, operations and/or and proceeds from Causes of Action, including the Applebee's Litigation, to fund these cash payments, as well as any other cash payments required under the Plan (including any cure payments in connection with the Debtors' assumption of Executory Contracts) on the Effective Date or as and when they become due.").

35.     Although Debtors claim that the Plan allows them to "retain sufficient liquidity and capital resources to conduct their business," D.I. 620 p. 58, they acknowledge that "the Debtors may lack sufficient liquidity to continue operating as planned after emergence, and may not be able to satisfy claims of creditors that arise after the Effective Date."  *Id.*, p. 60.  Certainly, a requirement to pay over $3.9 Million to the Collective Members which is not accounted for in the Plan has the potential to jeopardize the business of the Reorganized Debtors.

36.     In all events, the Debtors have not provided a sufficient basis to conclude that they will be able to satisfy those claims at any point after the Effective Date.

37.     The Debtors' failure to establish that they can ever pay the Collective Members' administrative and priority claims renders the Plan not feasible.

## **CONCLUSION**

For all of these reasons, this Court should deny confirmation of the Plan.

DATED:  November 9, 2018

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801

Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
Email:        loizides@loizides.com

     - and -

Jack A. Raisner (*pro hac vice* pending)
Robert N. Fisher (*pro hac vice* forthcoming)
OUTTEN & GOLDEN LLP
685 Third Avenue
New York, NY  10017
Telephone:    (212) 245-1000
E-mail:       jar@outtengolden.com
              rfisher@outtengolden.com