## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RMH FRANCHISE HOLDINGS, INC., *et al.*,[1] | Case No. 18-11092 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 618, 620, 648, 856** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER SECTION 1129 OF THE BANKRUPTCY CODE AND RULE 3020 OF THE BANKRUPTCY RULES CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF RMH FRANCHISE HOLDINGS, INC. AND ITS AFFILIATED DEBTORS, AS MODIFIED

## RECITALS

A.      RMH Franchise Holdings, Inc., NuLnk, Inc., RMH Illinois, LLC, RMH Franchise Corporation and Contex Restaurants (each a "**Debtor**," and collectively, the "**Debtors**") filed the *First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and Its Affiliated Debtors* (the "**Solicitation Plan**") [Docket No. 618] and the *Disclosure Statement with respect to the First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and Its Affiliated Debtors* (as approved, the "**Disclosure Statement**") [Docket No. 620] on October 9, 2018.[2]

B.      On September 4, 2018, the Debtors filed a notice of hearing to, among other things, consider the adequacy of the Disclosure Statement (the "**Disclosure Statement Notice**") [Docket No. 528]. The Disclosure Statement Notice was served by first class mail or

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: RMH Franchise Holdings, Inc. (7150); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); RMH Franchise Corporation (1807); and Contex Restaurants, Inc. (0710). The headquarters for the above-captioned Debtors is located at One Concourse Parkway, N.E. Suite 600, Atlanta, GA 30328.

[2]   Unless otherwise defined in this confirmation order (the "**Confirmation Order**"), capitalized terms used herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, this Confirmation Order, in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), or in the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), as the case may be.

hand delivery on the Office of the United States Trustee for the District of Delaware and all of the Debtors' known holders of Claims and Equity Interests as evidenced by the affidavit of service filed with the Bankruptcy Court on September 6, 2018 [Docket No. 531].

C.     On October 15, 2018, the Bankruptcy Court entered an order (the "**Disclosure Statement Order**") [Docket No. 648] approving, among other things:   (i) the adequacy of the Disclosure Statement; (ii) the forms of ballots and the Debtors' proposed procedures for soliciting votes to accept or reject the Plan, the manner of proving notice of the approval of the Disclosure Statement and the Confirmation Hearing and the tabulation of votes to accept or reject the Plan; and (iii) procedures for filing objections to confirmation of the Plan.

D.     As required by the Disclosure Statement Order, the Debtors, through the Bankruptcy Court-approved noticing and voting agent, Prime Clerk LLC ("**Prime Clerk**" or the "**Voting Agent**"), timely mailed or caused to be transmitted to all holders of Claims, as of the Record Date, entitled to vote on the Plan the Solicitation Packages (as defined in the Disclosure Statement Order).  As further required by the Disclosure Statement Order, the Debtors, through Prime Clerk, timely mailed to all holders of Claims and Equity Interests not entitled to vote on the Plan the Non-Voting Package consisting of the Confirmation Hearing Notice and the Notice of Non-Voting Status.  The Debtors also caused notice of the Confirmation Hearing to be published in the National Edition of *The New York Times* on October 18, 2018.  Affidavits of service and publication evidencing such actual and publication notice were filed with the Bankruptcy Court on October 17, 2018, October 19, 2018 and October 22, 2018.  [Docket Nos. 659, 664, and 675].

E.     On October 29, 2018, the Debtors, through Prime Clerk, filed and served the *Notice of (I) Possible Assumption of Executory Contracts and Unexpired Leases, (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto* [Docket No. 689] (the "**Initial Cure**

2

**Schedule**") identifying the executory contracts and unexpired leases that may be assumed in connection with confirmation of the Plan.  On November 14, 2018, the Debtors, through Prime Clerk, filed and served the *Supplemental Notice of (I) Possible Assumption of Executory Contracts and Unexpired Leases, (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto* [Docket No. 773] (together with the Initial Cure Schedule, the "**Cure Schedule**"). Affidavits of service evidencing such actual service appear at Docket Nos. 703, 789 and 791.

           F.      Pursuant to the Disclosure Statement Order, the voting deadline was November 8, 2018 at 5:00 p.m. (prevailing Eastern Time), unless extended in accordance with the Disclosure Statement Order.  The Debtors, pursuant to the authority granted in the Disclosure Statement Order, extended the voting deadline for Applebee's to the Confirmation Hearing and for the Administrative Agent and the Senior Lenders to the Confirmation Hearing.

           G.      On October 29, 2018, the Debtors also filed the Plan Supplement [Docket No. 690].  Notice of such Plan Supplement is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order and no other or further notice is or shall be required.

           H.      On December 6, 2018, the Voting Agent filed the *Declaration of James Daloia of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on Debtors' First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and Its Affiliated Debtors* [Docket No. 862] attesting to, and certifying the method and results of, the ballot tabulation for holders of Claims in Classes 3, 4, 5 and 6 (the "**Voting Report**").

           I.      The voting results, as certified in the Voting Report, are reflected in the chart below:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
| --- | --- | --- | --- | --- |
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Amount Voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Amount Voted) |
| Class 3 – Credit Agreements Claims | $61,927,665.32 (100%) | 3 (100%) | 0 (0%) | 0 (0%) |
| Class 4 – Trade Claims | $135,224.02 (100%) | 3 (100%) | 0 (0%) | 0 (0%) |
| Class 5 – General Unsecured Claims | $54,606,484.53 (99.58%) | 20 (83.33%) | $230,228.00 (0.42%) | 4 (16.67%) |
| Class 6 – Convenience Claims | $182,842.37 (80.40%) | 78 (89.66%) | $44,565.67 (19.60%) | 9 (10.34%) |

J.     In addition to the Voting Report, on December 6, 2018, the Debtors filed the *Declaration of Mitchell Blocher in Support of the First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and its Affiliated Debtors, As Modified* [Docket No. 863] (the "**Blocher Declaration**") and the *Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and Its Affiliated Debtors, As Modified* [Docket No. 864] (the "**Confirmation Memorandum**") in support of confirmation of the Plan.

K.     On December 5, 2018, the Debtors filed the *Notice of Filing of Blackline of First Amended Joint Chapter 11 Plan of Reorganization of RMH Franchise Holdings, Inc. and its Affiliated Debtors, As Modified* [Docket No. 856], which contained a blackline showing modifications (the "**Modifications**") to the Solicitation Plan (as modified, the "**Plan**", a copy of which is attached hereto as **Exhibit A**).

L.     The Confirmation Hearing was held and concluded on December 11, 2018.

NOW, THEREFORE, based upon the Bankruptcy Court's review of the Confirmation Memorandum, the Blocher Declaration, the Voting Report and upon all of the

4

evidence proffered or adduced and the arguments of counsel made at the Confirmation Hearing and the entire record of the Chapter 11 Cases, and after due deliberation thereon and sufficient cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409)</u>.  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.      <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.  As set forth below, the Debtors have met that burden.

3.      <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

4.    <u>Transmittal and Mailing of Materials; Adequate and Sufficient Notice</u>.
The Solicitation Packages and Non-Voting Packages were transmitted and served, and the
Confirmation Hearing Notice was published, in compliance with the Disclosure Statement Order,
the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and
Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local
Rules**") and such transmittal, publication and service was adequate and sufficient and no other or
further notice is or shall be required.    Adequate and sufficient notice of the Confirmation
Hearing, including the continuance thereof to December 11, 2018, and the other dates and
hearings described in the Disclosure Statement Order was given in compliance with the
Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order,
and no other or further notice is or shall be required.  All parties in interest in the Chapter 11
Cases had a full and fair opportunity to appear and be heard at the Confirmation Hearing and no
other or further notice is or shall be required.

5.    <u>Technical Modifications to the Plan</u>.  The Modifications comply with all
applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The
filing and service of the Modifications and the description of the Modifications on the record at
the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances
of the Chapter 11 Cases.  The Plan, as modified by the Modifications and certain other
modifications reflected in the Plan attached hereto as Exhibit A, constitutes the "Plan" and the
Plan Supplement, as modified by the Modifications, constitutes the "Plan Supplement".  Such
modifications are either not material or do not adversely change the treatment of any holders of
Claims and Equity Interests under the Plan, other than affected holders that have agreed to
modified treatment, do not require the re-solicitation of the Classes of Claims entitled to vote to
accept or reject the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy

Code and Bankruptcy Rule 3019. Since the treatment of holders of Claims under the Plan are not adversely affected or such affected holders have agreed to modified treatment, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by such modifications in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019,. No holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of such modifications.

6.      <u>Voting Results</u>. As described more fully in the Voting Report, Class 3, Class 4, Class 5 and Class 6 voted to accept the Plan. <u>See</u> Voting Report.

7.      <u>Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      <u>Proper Classification of Claims and Equity Interests (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims, Professional Claims, and Priority Tax Claims, which need not be classified, the Plan designates eight (8) Classes of Claims and Equity Interests with respect to the Debtors. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Class 1 and Class 2 are not Impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)      <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Class 3, Class 4, Class 5, Class 6, Class 7, and Class 8 as Impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)      <u>Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or

7

Equity Interest in a particular Class, unless the holder of a particular Claim or Equity Interest in such Class has agreed to a less favorable treatment of its Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).   In accordance with section 1123(a)(5) of the Bankruptcy Code, Article V, including the Applebee's Settlement Agreement, the Senior Lender Settlement, and various other provisions of the Plan, provides adequate and proper means for the implementation of the Plan.   All documents necessary to implement the Plan, including without limitation, those contained in the Plan Supplement and all other relevant and necessary documents, have been developed and negotiated in good faith and at arms' length and, subject to and upon the occurrence of the Effective Date, shall be valid binding and enforceable agreements and not be in conflict with any federal or state law.

(vi)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).   The Reorganized Debtors Constituent Documents prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

(vii)   Designation of Officers and Directors (11 U.S.C. § 1123(a)(7)). In accordance with section 1123(a)(7) of the Bankruptcy Code, Section 5.04(b) of the Plan contains provisions regarding the manner of selection of the board of directors and officers of the Reorganized Debtors that are consistent with the interests of all holders of Claims and Equity Interests and public policy.

(viii)  Additional Plan Provisions (11 U.S.C. § 1123(b)).  The provisions of the Plan are appropriate and consistent with the provisions of the Bankruptcy Code.

(ix)    Assumption and Rejection of Executory Contracts.  Section 6.01 of the Plan provides for the assumption of executory contracts and unexpired leases of the Debtors as of the Effective Date, except for any executory contract or unexpired lease that is subject to a pending motion to reject, assumed or rejected by a prior order of the Bankruptcy Court, or rejected by the Confirmation Order, as contemplated by section 1123(b)(2) of the Bankruptcy Code.   Section 6.03 of the Plan provides for the assumption of all insurance policies of the Debtors in which the Debtors are or were insured parties (including any policies covering directors' or officers' conduct), unless expressly rejected by a prior order of the Bankruptcy Court (or through this Confirmation Order).   Section 6.04 of the Plan additionally provides for the assumption of all severance policies and compensation and benefit plans, policies and programs of the Debtors applicable to their employees and non-employee directors, as contemplated by section 1123(b)(2).

8

(x)    Cure of Defaults.    Section 6.02 of the Plan provides for satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All cure amounts will be determined in accordance with the underlying agreements (or as otherwise agreed between the parties thereto), this Confirmation Order (including **Exhibit B-1** and **Exhibit B-2** attached hereto) and applicable bankruptcy and nonbankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code

(xi)    Applebee's Settlement.    The Plan attaches and incorporates the Applebee's Settlement Agreement, which represents a global settlement among the Debtors, Applebee's and ACON.

(xii)    Senior Lender Settlement.    The Plan incorporates the Senior Lender Settlement, which represents a global settlement among the Debtors, the Senior Lenders, Administrative Agent and ACON with respect to the allowance and treatment of the Credit Agreement Claims.

(xiii)    Rule 3016(a) and (b) of the Bankruptcy Rules.  The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

8.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(i)    the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(ii)    the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Bankruptcy Court; and

(iii)    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

9.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors and their counsel and advisors

9

participated in good faith in negotiating, at arms' length, the Plan and the contracts, instruments, agreements and documents related to or necessary to implement, effectuate and consummate the Plan. The Debtors and their counsel and advisors also participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, confirmation and consummation of the Plan. In so determining, the Bankruptcy Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of the Confirmation Hearing, the formulation of the Plan, the documents included in the Plan Supplement, and all related pleadings, exhibits, statements and comments regarding confirmation of the Plan and the approval of the Plan by the holders of Claims that voted on the Plan. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purposes of effecting a reorganization of the Debtors. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms'-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

10. **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Except for the fees and expenses of professionals representing the Administrative Agent and the Senior Lenders paid in accordance with the Final Cash Collateral Order, any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

11. **Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))**. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement discloses

01:23763283.15

the identities and affiliations of the individuals proposed to serve after confirmation of the Plan

as the officers and directors of the Reorganized Debtors and the nature of compensation for any

insider that will be employed by the Reorganized Debtors.  The proposed officers and directors

appointment to, or continuance in, such offices is consistent with the interests of holders of

Claims and Equity Interests, and public policy.

12.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Debtors' businesses are

not subject to rate regulation by any governmental regulatory commission; therefore, section

1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

13.    Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).  The Plan

satisfies section 1129(a)(7) of the Bankruptcy Code.  The evidence proffered or adduced at the

Confirmation Hearing (i) is persuasive and credible; (ii) has not been controverted by other

evidence; and (iii) establishes that each holder of a Claim or Equity Interest in an Impaired Class

either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such

Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less

than the amount that it would receive if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code, which result is also evidenced by the Liquidation Analysis.

14.    Acceptance By the Requisite Classes of Claims (11 U.S.C.§ 1129(a)(8)).

Classes 3 through 6 are the only Impaired Classes entitled to vote on the Plan.  As evidenced in

the Voting Report, Class 3, Class 4, Class 5 and Class 6 voted to accept the Plan.  Class 1 and

Class 2 are Unimpaired under the Plan, and therefore are deemed to have accepted the Plan.  The

Plan provides that holders of Claims in Class 7 and holders of Equity Interests in Class 8 will not

receive any distribution or retain any property on account of such Claims or Equity Interests, as

the case may be, and these Classes are therefore deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Notwithstanding that section 1129(a)(8) of the

Bankruptcy Code has not been satisfied with respect to all Classes, through section 1129(b) of the Bankruptcy Code, the Plan may be confirmed over the non-acceptance of the Plan by Class 7 and Class 8.

15.    Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The Plan's treatment of Administrative Claims, Professional Claims, Priority Tax Claims, and Other Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

16.    Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Voting Report, Class 3, which is one of the Impaired Classes, along with Class 4, Class 5 and Class 6, voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider. Consequently, section 1129(a)(10) of the Bankruptcy Code is satisfied.

17.    Feasibility (11 U.S.C. § 1129(a)(11)). The Debtors have established, by a preponderance of the evidence, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors. To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, as set forth in the Blocher Declaration, the Debtors, among other things, prepared and included the financial projections attached as Exhibit 5 to the Disclosure Statement (the "**Financial Projections**"), secured the Funding Commitment from the Plan Sponsor and, with the Plan Sponsor, obtained exit financing commitments through the Exit Facility. The Financial Projections, the terms of the Exit Facility and the Blocher Declaration, along with the other evidence proffered or adduced at or in connection with the Confirmation Hearing, support the finding that the Plan is feasible and there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan with respect to operating their businesses in the ordinary course. The Bankruptcy

Court finds that the Financial Projections and the evidence proffered or adduced at or in connection with the Confirmation Hearing (i) are persuasive and credible; (ii) have not been controverted by other evidence; (iii) demonstrate adequate assurance of future performance by the Reorganized Debtors under the Executory Contracts proposed to be assumed under the Plan; and (iv) establish that the Plan is feasible and confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

18.      Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).  All fees due prior to the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to Section 2.04 of the Plan.  Moreover, each of the Reorganized Debtors will be responsible for paying their respective Quarterly Fees under 28 U.S.C. § 1930(a)(6) arising after the Effective Date until their respective Chapter 11 Case is closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

19.      Continuation of Retiree Benefits; Domestic Support Obligations; Unsecured Claims Against Individual Defendants; Transfers by Non-Profit Organizations (11 U.S.C. § 1129(a)(13) - (16)).  The Debtors do not have any "retiree benefits" programs as such term is defined in section 1141 of the Bankruptcy Code, and none of the Debtors have domestic support obligations, are individuals, or are nonprofit organizations; therefore, sections 1129(a)(13) – (16) are not applicable to confirmation of the Plan and the Chapter 11 Cases.

20.      Confirmation of Plan Over Non-Acceptance of Certain Impaired Classes (11 U.S.C. §1129(b).  The classification and treatment of Claims and Equity Interests in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code notwithstanding that Class 7 and Class 8

(the "**Rejecting Classes**") were deemed to reject the Plan. Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Plan does not discriminate unfairly with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) there is no holder of any interest of the Debtors that is junior to the Rejecting Classes that is receiving or retaining any property under the Plan on account of such junior interests and (ii) the holders of Claims against the Debtors that are senior to the Rejecting Classes are receiving distributions, the value of which is less than 100% of the Allowed amount of their Claims. Accordingly, the requirements of section 1129(b)(1) and (b)(2) of the Bankruptcy Code are satisfied with respect to the Rejecting Classes, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to the Rejecting Classes. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

21.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>. Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

22.     <u>Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and there has been no filing by any governmental unit asserting any such attempted avoidance.

23.     <u>Good Faith Solicitation and Participation (11 U.S.C. § 1125(e))</u>. Based upon the record before the Bankruptcy Court, the Debtors and their respective counsel, advisors and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules in connection with the solicitation of

14

acceptances of the Plan and the plan options and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunctive and exculpatory provisions set forth in the Plan.

24.    <u>Implementation</u>.    All documents necessary to implement the Plan, including those contained in the Plan Supplement and all documents evidencing, effectuating or relating to the Transaction (as defined below), and all other relevant and necessary documents have been developed and negotiated in good faith and at arms'-length and shall, on completion of documentation and execution, be valid, binding, and enforceable agreements.

25.    <u>Satisfaction of Confirmation Requirements</u>.    The Plan satisfies each of the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

26.    <u>Executory Contracts and Unexpired Leases</u>.    The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption or rejection of executory contracts and unexpired leases as contemplated by the Plan and this Confirmation Order, including, without limitation, the provisions related to adequate assurance of future performance.    The evidence supporting adequate assurance of future performance proffered or adduced by the Debtors at, or prior to, or in the Blocher Declaration filed in connection with, the Confirmation Hearing, is reasonable, persuasive, credible and accurate and has not been controverted by other evidence.

27.    <u>Releases by the Debtors</u>.    The Debtor Releases granted to the Debtor Releasees as set forth in Section 10.02(a), the releases by the Debtors of the Applebee's Released Parties in Section 10.02(b) of the Plan (the "**Applebee's Release**"), and the releases by the Debtors of the Senior Lender Releasees in Section 10.02(c) of the Plan (the "**Senior Lender Release**"), represent a valid exercise of the Debtors' business judgment.

28.     Pursuing any such claims against the Debtor Releasees, Applebee's Released Parties, and Senior Lender Releasees is not in the best interests of the Debtors' various constituencies as the costs involved likely would outweigh any potential benefits from pursuing such claims.  In addition, the Debtor Releasees, Applebee's Released Parties, and Senior Lender Releasees provided good and valuable consideration in exchange for the Debtor Releases, the Applebee's Release, and the Senior Lender Release, including providing services and funding, as the case may be, settling and compromising Claims, consenting to the use of cash collateral and otherwise facilitating the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

29.     Releases of the Debtor Releasees, Applebee's Released Parties, and Senior Lender Releasees by the Debtors are critically important to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders, including Applebee's, the Administrative Agent and the Senior Lenders, and ACON and reflects and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.  Each of the Debtor Releasees, Applebee's Released Parties, and the Senior Lender Releasees afforded value to the Debtors and aided in the reorganization process.  The Debtor Releasees, Applebee's Released Parties, and Senior Lender Releasees played an integral role in the formulation and implementation of the Plan.  The Plan reflects the settlement and resolution of several complex issues, and the Debtor Releases, the Applebee's Release, and the Senior Lender Releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.

30.     In approving the Debtor Releases, Applebee's Release, and the Senior Lender Release based on the record and the facts and circumstances of the Chapter 11 Cases, the Bankruptcy Court hereby determines that the Debtor Releases are:  (i) in exchange for the good

01:23763283.15

and valuable consideration provided by the Debtor Releasees and the Senior Lender Releasees; (ii) a good faith settlement and compromise of the claims released by the Debtor Releases, the Applebee's Release, and the Senior Lender Release; (iii) in the best interests of the Debtors and all holders of Claims and Equity Interests; (iv) fair, equitable, and reasonable; and (v) given and made after notice and opportunity for hearing.

31.    Releases by Holders of Claims.  The circumstances of the Chapter 11 Cases render the Third-Party Releases granted to the Third-Party Releasees, as set forth in Section 10.03 of the Plan, are consensual and critical to the success of the Plan.  Under the Plan, the Third-Party Releases are given by (i) the Committee; (ii) the Senior Lenders; (iii) the Administrative Agent; (iv) ACON; (v) Applebee's; (vi) holders of Unimpaired Claims that do not object to Confirmation of the Plan; and (vii) holders of Trade Claims, General Unsecured Claims and Convenience Claims, except for those who rejected the Plan or, those who did not vote on the Plan, but affirmatively opted not to grant the Third-Party Release on their Ballots.

32.    The Third-Party Releases are critically important to the success of the Plan, which embodies the settlement of significant and complex claims with the Debtors' primary stakeholders and reflects and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.  Each of the Third-Party Releasees afforded value to the Debtors and aided in the reorganization process.  The Third-Party Releasees played an integral role in the formulation and implementation of the Plan.  The Plan reflects the settlement and resolution of several complex issues, and the Third-Party Releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.

33.    In approving the Third-Party Releases, the Bankruptcy Court hereby determines, based upon the record and the facts and circumstances of the Chapter 11 Cases, that

the Third-Party Releases are: (i) in exchange for the good and valuable consideration provided by the Third-Party Releasees; (ii) a good faith settlement and compromise of the claims released by the Releasing Parties; (iii) are consensually given by the Releasing Parties; (iv) in the best interests of the Debtors and the Estates; (v) fair, equitable, reasonable and necessary to the Debtors' reorganization; and (vi) given and made after notice and opportunity for hearing.

34.     Exculpation. The exculpation provisions set forth in Section 10.04 of the Plan (the "**Exculpation**") are essential to the Plan and complies with applicable law. The record of the Chapter 11 Cases fully supports the Exculpation, and the Exculpation is appropriately tailored to protect the Exculpated Parties from inappropriate claims and litigation.

35.     Injunction. The injunction provisions set forth in Section 10.05 of the Plan (the "**Injunction**") are essential to the Plan and are necessary to preserve and enforce the Exculpation, the Debtor Releases, the Third-Party Releases and discharge provided for in the Plan and this Confirmation Order and are appropriately tailored to achieve such purposes.

36.     The Debtor Releases, Senior Lender Release, the Third-Party Releases, Exculpation and Injunction: (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 157(b)(1), 157(b)(2), 1334(a), 1334(b) and 1334(d) and the *Amended Standing Order of Reference from the United States Bankruptcy Court for the District of Delaware* dated as of February 29, 2012; (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (iii) are integral elements of the settlements and transactions upon which the Plan is based; (iv) confer material benefits on, and are in the best interests of, the Debtors and the Estates; (v) are critical to the overall objectives of the Plan to finally resolve all Claims and Equity Interests among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (vi) are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and other applicable law; (vi) were given and made after adequate notice and opportunity

18

for a hearing; and (viii) are fair, equitable, reasonable and necessary to the Debtors' reorganization. Based upon the record of the Chapter 11 Cases and the evidence proffered, adduced and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the Debtor Releases, Senior Lender Release, the Third-Party Releases, Exculpation and Injunction are consistent with the Bankruptcy Code and applicable law.

37.    <u>Exit Facility</u>. The Exit Facility is the best financing alternative available to the Debtors. The availability of the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors, and constitutes reasonably equivalent value and fair consideration. The terms of the Exit Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in connection with the Exit Facility and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Order. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.

38.    <u>Applebee's Settlement</u>.  The Plan represents and incorporates a global settlement among the Debtors, Applebee's and ACON. The settlement of the claims and controversies embodied in the terms of the Applebee's Settlement Agreement: (i) represents a sound exercise of the Debtors' business judgment; (ii) was negotiated in good faith and at arms'

19

length; (iii) is a good faith settlement and compromise; (iv) is in the best interests of the Debtors and their Estates; and (v) is fair, equitable, and reasonable under the circumstances of the Chapter 11 Cases.  Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan and Settlement Agreement shall constitute a good-faith compromise and full and final settlement of all Claims and controversies resolved pursuant to the Plan and the Applebee's Settlement Agreement.  Annex A to the Applebee's Settlement Agreement contains confidential and non-public information the disclosure of which could cause a significant disruption to the Debtors' and Reorganized Debtors business operations, and jeopardize their ability to successfully reorganize and consummate the Plan.  This Confirmation Order is without prejudice to any parties' right to object to any motion seeking approval of the sale of the Debtors' assets or any bid procedures relating thereto, including without limitation, ACON serving as a stalking horse bidder, proposed bidding procedures, sale milestones, break-up fees, expense reimbursement and the sale of substantially all of the Debtors' assets together; *provided, however*, that Applebee's right to object to any of the foregoing should be limited to circumstances where conditions under the Settlement Agreement are not satisfied or are not in compliance with the Settlement Agreement.

39.    <u>Senior Lender Settlement</u>.  The Plan represents and incorporates a global settlement among the Debtors, the Senior Lenders, the Administrative Agent and ACON.  The settlement of the claims and controversies embodied in the terms of the Senior Lender Settlement:  (i) represents a sound exercise of the Debtors' business judgment; (ii) was negotiated in good faith and at arms' length; (iii) is a good faith settlement and compromise; (iv) is in the best interests of the Debtors and their Estates; and (v) is fair, equitable, and reasonable under the circumstances of the Chapter 11 Cases.  Pursuant to Bankruptcy Rule 9019, in

01:23763283.15

consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and full and final settlement of all Claims, including the Claims asserted by the Committee through the request for standing appearing at Docket No. 455 in the Chapter 11 Cases, and controversies resolved pursuant to the Plan and the Senior Lender Settlement.

40.    Transaction.  The Plan accounts for the distribution of Plan Sponsor New Common Stock to ACON, as the Plan Sponsor, in exchange for the Plan Sponsor Cash Payment (the "**Transaction**").  The Transaction (i) represents a sound exercise of the Debtors' business judgment; (ii) represents a diligent, non-collusive, good faith, and arms'-length negotiation; (iii) is a good faith settlement and compromise; (iv) is in the best interests of the Debtors, their Estates, and the Debtors' Creditors; and (v) is a fair, equitable, and reasonable under the circumstances of the Chapter 11 Cases.

41.    The Debtors, ACON, Applebee's, the Administrative Agent, the Senior Lenders, the Committee and all of their respective managers, members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives have acted in good faith by proceeding to (i) consummate the Plan and the agreements, transactions, and transfers contemplated thereby, including, but not limited to, the Transaction, and (ii) take the actions authorized and directed by this Confirmation Order.  The Debtors, ACON, Applebee's, the Administrative Agent, the Senior Lenders and the Committee have acted in good faith in all respects in connection with the Transaction in that (i) all payments made by the Plan Sponsor and other agreements or arrangements entered into by the Plan Sponsor with the Debtors in connection with the Transaction have been disclosed and (ii) the negotiation and execution of the Transaction and agreements related thereto and all other aspects of the Transaction were conducted in good faith.

21

42.     The Transaction, when coupled with the settlements embodied in the Plan, including the Applebee's Settlement Agreement and the Senior Lender Settlement, constitutes the highest and best offer obtainable for the Plan Sponsor New Common Stock under the circumstances and will provide a greater recovery for the Creditors than could be provided by any alternative.   Further, the Debtors have demonstrated good, sufficient and sound business purposes and justification for the Transaction because, among other things, the Debtors diligently and in good faith analyzed other available options in connection with the Debtors' assets and new equity and determined that (i) the terms and conditions of the Transaction embodied in the Plan; (ii) the transfer of the Plan Sponsor New Common Stock; and (iii) the Plan Sponsor Cash Payment, are all fair and reasonable and together constitute the highest or otherwise best value obtainable under the circumstances for the Plan Sponsor New Common Stock.   Thus, prompt consummation of the Transaction contemplated by the Plan will serve the best interests of the Debtors, their Estates, the Creditors and all other parties in interest by maximizing the value to be obtained for the Plan Sponsor New Common Stock.

43.     <u>No Fraudulent Transfer</u>.  The Transaction and the Plan were negotiated at arms-length and the Transaction constitutes reasonably equivalent value and fair and adequate consideration for the Plan Sponsor New Common Stock under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the other laws of the United States, or any state, territory, jurisdiction or possession thereof (collectively, "**Laws**"). The terms and conditions of the Transaction and the Plan are fair and reasonable under the circumstances, the consideration to be paid for the Plan Sponsor New Common Stock will provide a greater recovery to the Creditors than would be provided under any other available alternative, and the Transaction was not formulated for the purpose of, nor does it have the effect of, hindering, delaying or defrauding the Debtors or their Creditors under any applicable Laws.

22

The Transaction does not have any fraudulent or otherwise improper or unlawful purpose. In addition, no other person, entity, or group of persons or entities has offered to purchase the Plan Sponsor New Common Stock for greater economic value to the Debtors' Estates than ACON. The Debtors' determination that the Transaction constitutes the highest and otherwise best offer for the Plan Sponsor New Common Stock was a valid, sound and reasonable exercise of their business judgment.

44.     Good Faith. The Debtors, ACON, Applebee's, the Administrative Agent, the Senior Lenders, the Committee and all of their respective managers, members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, transactions, and transfers contemplated thereby, including, but not limited to, the Transaction, and (ii) take the actions authorized and directed by this Confirmation Order.

45.     Certified Copy. Once entered by the Bankruptcy Court, a certified copy of this Confirmation Order may be filed with any appropriate clerk and/or recorded with any appropriate recorder to cancel any Claims and Equity Interests of record on the Assets, other than in connection with the Exit Facility.

46.     Financing Statements. Other than in connection with the Exit Facility or as otherwise provided in the Plan with respect to Allowed Other Secured Claims, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and with respect to the Administrative Agent and Senior Lenders, subject to Administrative Agent's indefeasible receipt of the entire Credit Agreement Up-Front Payment, if any person or entity which has filed any financing statements or other documents or agreements evidencing any Claims and Equity Interests on, in or against all or any portion of the Debtors' property shall not have delivered to the Debtors prior to the Confirmation Hearing, in proper form for filing and

23

executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Claims and Equity Interests and any other documents necessary for the purpose of documenting the release of all Claims and Equity Interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtors, and the Reorganized Debtors, as applicable, are authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity solely without any further order of the Bankruptcy Court; provided, however, that nothing herein shall release, settle, or discharge any rights, title or interests that the Administrative Agent or any of the Senior Lenders have with respect to collateral pledged to secure the Letter of Credit.

47.    Retention of Jurisdiction.    The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and the Confirmation Order.

48.    Substantive Consolidation for Plan Purposes.    Section 1.07 of the Plan provides for the substantive consolidation of the Debtors for all purposes related to the Plan, including, without limitation, voting, confirmation and Distributions thereunder.    Based on the Confirmation Memorandum, the Blocher Declaration and in the absence of any objections by parties impacted by the consolidation to such request, the Bankruptcy Court finds that such substantive consolidation of the Debtors and their Estates is justified and appropriate in the Chapter 11 Cases for purposes of the Plan and the distributions thereunder.

## DECREES

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

1.    Findings of Fact; Conclusions of Law.    The Findings of Fact and Conclusions of Law herein constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

24

Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

2.      <u>Confirmation</u>. The Plan, including all exhibits and modifications thereto, a copy of which is annexed hereto as **Exhibit A**, is approved and confirmed under section 1129 of the Bankruptcy Code.

3.      <u>Resolution of Objections</u>. All parties in interest in the Chapter 11 Cases have had a full and fair opportunity to litigate all issues raised by their respective objections to confirmation or which might have been raised, and such objections have been fully and fairly litigated. As presented at the Confirmation Hearing, the consensual resolution of certain objections, including the resolution of Applebee's objection to confirmation through the Applebee's Settlement Agreement and the resolution of the confirmation objection filed by the Administrative Agent and Senior Lenders through the Modifications, as provided for herein, satisfies all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, is in the best interest of the Debtors and their Estates, and is supported by the record of the Confirmation Hearing, and therefor are hereby approved. Any objections to confirmation of the Plan or any other responses and reservation of rights with respect to confirmation of the Plan not previously resolved, resolved herein or resolved on the record at the Confirmation Hearing, or withdrawn are hereby overruled as set forth herein and on the record of the Confirmation Hearing.

4.      <u>Record Closed</u>. The record of the Confirmation Hearing is hereby closed.

5.      <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the Findings of Fact and Conclusions of Law set forth herein, are nonseverable and mutually dependent.

6.    Plan Classification Controlling.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan and this Confirmation Order.  The classification set forth on the Ballots tendered to or returned by the holders of Claims entitled to vote on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; and (iii) shall not be binding on the Debtors, their Estates, or the Reorganized Debtors.  The classification scheme of the Plan and the treatment of all Claims and Equity Interests as provided thereunder shall be, and hereby are, approved.

7.    Binding Effect.  Pursuant to section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or Equity Interest and such holders' respective successors and assigns, whether or not the Claims or Equity Interests of such holders are Impaired under the Plan and whether or not such holders have voted to accept the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors. This Confirmation Order shall be valid, enforceable and binding on (i) the Debtors; (ii) the Reorganized Debtors; (iii) all holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan; (iv) each person acquiring property under the Plan, notwithstanding any otherwise applicable nonbankruptcy law; and (v) all filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state and local officials and all other persons, institutions, agencies and entities who may be required by operation of law, the

26

duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments.

8.    <u>Debtor-in-Possession Transactions</u>.    All transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date, to the extent previously approved by the Bankruptcy Court or effected in the ordinary course of business, are hereby approved and ratified.

9.    <u>Distributions Fair</u>.    Pursuant to 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 (to the extent applicable) and in consideration for the classification, distribution, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.    The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlements of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court such compromises or settlements are in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests and are fair, equitable and reasonable.

10.    <u>Exit Facility Approved</u>.

(i)    On the Effective Date, the Reorganized Debtors shall execute and deliver, as applicable, the Exit Facility Documents and all related documents.    All such documents shall become effective in accordance with their terms and the Plan.

(ii)    The Bankruptcy Court hereby (i) approves the Exit Facility and, subject to the further notice and opportunity to object as provided below, the Exit Facility Documents and all transactions contemplated thereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors, as applicable, in connection therewith, including the payment of all other fees and expenses (including payment of legal fees

27

and expenses of counsel to the lenders), losses, damages, indemnities and other amounts provided for by the Exit Facility Documents, (ii) authorizes the Reorganized Debtors, without further notice to or action, order or approval of this Bankruptcy Court and without the need for any further corporate or shareholder action, to enter into and fully perform their obligations under the Exit Facility Documents, and (iii) ratifies and approves all fees, costs, and expenses paid by the Debtors or to be paid (if any) by the Reorganized Debtors in connection with the Exit Facility.  Solely with respect to the approval of the Exit Facility Documents, the Debtors shall file the Exit Facility Documents in substantially final form at least five (5) business days prior to the anticipated Effective Date and serve such notice on the Bankruptcy Rule 2002 service list and all parties that filed an objection to confirmation of the Plan.  Parties in interest shall have four (4) business days to file an objection to the Exit Facility Documents solely on the basis that such documents are inconsistent with the terms of the Exit Facility Commitment.  If an objection is filed and cannot be consensually resolved, the Debtors shall request an emergency hearing with the Bankruptcy Court.

(iii)    Upon their execution, the Exit Facility Documents shall constitute legal, valid, binding and authorized debt obligations of each of the Reorganized Debtors, and the terms and provisions set forth in the Exit Facility Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to challenge, avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

(iv)   On the Effective Date, all of the Liens, mortgages, deeds of trust, pledges and other security interests to be granted in accordance with the Exit Facility Documents (a) shall be deemed to be approved; (b) shall be valid, legal, binding and enforceable Liens on, and security interests in, the collateral granted under and in accordance with the terms of the respective Exit Facility Documents; (c) shall be deemed fully perfected on the Effective Date, and the priorities of such Liens, mortgages, deeds of trust and other security interests shall be as set forth in the respective Exit Facility Documents; and (d) shall not be subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) or any other challenge for any purposes whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.   The Reorganized Debtors and the secured parties (and their designees and agents) under such Exit Facility Documents are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to evidence, establish, continue and perfect all such Liens, mortgages, deeds of trust and other security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order (it being understood that perfection of the liens and security interests granted under the Exit Facility Documents shall occur automatically on the Effective Date by virtue of the entry of this Order, and any such filings, recordings, approvals and consents shall not be necessary or required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens, mortgages, deeds of trust and other security interests to third parties.

(v)   Notwithstanding anything to the contrary contained in the Plan, Plan Supplement, the Exit Facility Documents or this Confirmation Order, no liens securing the

obligations under the Exit Facility Documents shall be granted in any unexpired lease of non-residential real property unless such liens are expressly permitted by the terms of the applicable lease or otherwise granted with the consent of the landlord, and no rights of use or occupancy to such non-residential real property leased by the Debtors shall be granted pursuant to the Plan, Exit Facility Documents, or this Confirmation Order beyond the rights, if any, provided in the applicable lease, under applicable law, or by separate agreements entered into among the applicable landlord and the applicable lenders.

11.    The Applebee's Settlement.  The settlement embodied in the terms of the Applebee's Settlement Agreement and implemented pursuant thereto and the Plan is in the best interests of the Debtors, their Estates and the holders of Claims and Equity Interests and is fair, equitable and reasonable under the circumstances of the Chapter 11 Cases.  Accordingly, the Applebee's Settlement Agreement is hereby approved pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019; provided, however, that this Confirmation Order is without prejudice to any parties' right to object to any motion seeking approval of the sale of the Debtors' assets or any bid procedures relating thereto, including without limitation, ACON serving as a stalking horse bidder, proposed bidding procedures, sale milestones, break-up fees, expense reimbursement and the sale of substantially all of the Debtors' assets together.  The Applebee's Settlement Agreement is hereby deemed incorporated in the Plan.  In the event of a conflict between the terms of the Applebee's Settlement Agreement and other provisions of the Plan, the terms of the Applebee's Settlement Agreement shall control, except with respect to the limitation of the parties granting the Third Party Release to Applebee's.  Annex A to the Applebee's Settlement Agreement is confidential.  Pursuant to sections 105 and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1(d), Annex A to the Applebee's Settlement Agreement shall be filed under seal and shall remain under seal, confidential, and not

30

made available to anyone, except for the Bankruptcy Court, the U.S. Trustee, counsel for the Administrative Agent, Applebee's, ACON and counsel for the Committee, and others only (i) at the discretion of the Debtors and the Reorganized Debtors, including, but not limited to, ACON, or (ii) upon further Bankruptcy Court order. Any subsequent pleadings that attach Annex A to the Applebee's Settlement Agreement or make reference to the information therein shall also be filed under seal and/or redacted to preserve the confidentiality of such information.

12.    <u>Securities to be Issued Pursuant to the Plan</u>. On the Effective Date, Reorganized RMH Franchise Holdings, Inc. shall issue, or cause to be issued, the Plan Sponsor New Common Stock to the Plan Sponsor in exchange for the Plan Sponsor Cash Payment in accordance with the terms of the Plan without the need for any further corporate or shareholder action. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of any of the Reorganized Debtors, the Reorganized Debtors are authorized to perform all tasks necessary to execute all documents, agreements and instruments necessary or appropriate to issue the Plan Sponsor New Common Stock. The transfer of Plan Sponsor New Common Stock in exchange of the Plan Sponsor Cash Payment is fair, acceptable, and for fair market value.

13.    <u>Vesting of Assets</u>. On the Effective Date, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan or this Confirmation Order, all Assets shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of holders of Claims and Equity Interests. Notwithstanding anything to the contrary in the Plan or herein, all Avoidance Actions shall be waived by the Debtors and shall not vest in the Reorganized Debtors. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of all restrictions of the Bankruptcy Code or Bankruptcy

31

Rules or any supervision of or approval by the Bankruptcy Court, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in the Plan. Nothing in this Confirmation Order shall be deemed to vest the real property owned by RMH Franchise Corporation located in the Town of Queen Creek, Maricopa County, Arizona (the "**Queen Creek Property**") in the Reorganized Debtors free and clear of the encumbrance asserted by VPQCM, LLC in its objection to confirmation appearing at Docket No. 875 in the Chapter 11 Cases and the issue of the vesting of the Queen Creek Property free and clear shall be subject to a further hearing and order of the Bankruptcy Court. For avoidance of doubt, the Queen Creek Property, upon the Effective Date, shall vest in the Reorganized Debtors, subject to the immediately preceding sentence.

14.     Gift Certificates.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Reorganized Debtors shall retain all gift certificate obligations as shown on the Stored Value Systems reports of all gift certificates and gift cards issued by the Debtors that are unredeemed as of the Effective Date.

15.     Preservation of Causes of Action.  The Reorganized Debtors shall retain all Causes of Action, other than Avoidance Actions. Nothing contained in the Plan or this Confirmation Order shall be deemed to be a release, waiver or relinquishment of any such Causes of Action except as expressly provided in the Plan or this Confirmation Order. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Causes of Action (other than Avoidance Actions) that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by the Plan or this Confirmation Order may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

32

16.    <u>Substantive Consolidation Approved</u>.  As provided in Section 1.07 of the Plan, the substantive consolidation of the Debtors for purposes of the Plan, including voting, confirmation and distributions, is approved pursuant to sections 105(a), 541, 1123 and 1129 of the Bankruptcy Code.  For purposes of clarification, the Bankruptcy Court is not, by this Confirmation Order, ruling on whether the Debtors are or will be substantively consolidated for purposes of (i) claims objection and resolutions, or (ii) the pursuit of Causes of Action by the Debtors.  The U.S. Trustee's objection with respect to the same, and with respect to the effect of substantive consolidation on fee obligations arising under 28 U.S.C. § 1930(a)(6), are fully reserved.  The Debtors' rights to pursue closure of the Chapter 11 Cases and argue substantive consolidation pursuant to the Plan is fully reserved.

17.    <u>Continued Corporate Existence</u>.  Except as otherwise expressly provided in the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Reorganized Debtors Constituent Documents for the purposes of satisfying their obligations under the Plan and the continuation of their businesses.  On or after the Effective Date, each Reorganized Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law and such Reorganized Debtor's Constituent Documents, as such Reorganized Debtor may determine is reasonable and appropriate.   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Claims against a particular Debtor or Reorganized Debtor that have not been released under the Plan or this Confirmation Order shall remain the obligations solely of such Debtor or Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor solely by virtue of the Plan or the Chapter 11 Cases.

33

18.    <u>Exemption from Registration Requirements</u>.  The Bankruptcy Court finds and concludes that the issuance of the Plan Sponsor New Common Stock is exempt from registration under the Securities Act as a private placement under section 4(a)(2) of the Securities Act.  The Plan Sponsor New Common Stock will be offered or issued without registration under the Securities Act or any similar federal, state or local laws in reliance on section 1145(a) of the Bankruptcy Code, section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and other applicable exceptions.

19.    <u>Cancellation of Certain Existing Security Interests</u>.  Except as otherwise expressly provided in the plan or this Confirmation Order, upon payment or other satisfaction of an Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors (as applicable) any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens or *lis pendens*.

20.    <u>Plan Documents</u>.  The forms, terms and provisions of each of the documents filed as part of the Plan Supplement or in connection with the Modifications (collectively, the "**Plan Documents**") are hereby approved.  On the Effective Date, the Debtors are hereby authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity for any further corporate, board or shareholder action.  The Plan Documents shall be deemed incorporated into the Plan in all respects.  Each of the Plan Documents, once executed, shall constitute a legal, valid binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any

34

bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document).

      21.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

      (i)    <u>General Treatment</u>. As of and subject to the occurrence of the Effective Date and payment of any applicable Cure Amount, all executory contracts and unexpired leases identified on **Exhibit B-1** attached hereto and all unexpired leases of non-residential real property identified on **Exhibit B-2** attached hereto (including, without limitation, any and all amendments, modifications, side letters, memoranda of understanding, documents incorporated by reference, attachments and exhibits thereto, each an "**Assumed Real Property Lease**" and collectively, the "**Assumed Real Property Leases**") shall be deemed assumed; <u>provided, however</u>, that (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order, and (b) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject pending as of the entry of this Confirmation Order shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion. Subject to the occurrence of the Effective Date, this Confirmation Order shall constitute approval of the assumptions described in Section 6.01 of the Plan and provided for herein pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code and the terms of this Confirmation Order. Subject to the terms of the Plan and this Confirmation Order, each of the executory contracts and unexpired leases assumed pursuant to the Plan and this Confirmation Order shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the Applebee's Settlement Agreement, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law. The parties to such executory contracts or unexpired leases to be assumed pursuant to the Plan

35

and this Confirmation Order were afforded with good and sufficient notice of such assumption and an opportunity to object and be heard.  For avoidance of doubt, (i) **Exhibit B-1** and **Exhibit B-2** attached hereto are intended to and shall be deemed to supersede the Cure Schedule; and (ii) the Assumed Real Property Leases shall be assumed as may be amended by any executed written amendments to the Assumed Real Property Leases entered into by and between the Debtors and the counterparties to such Assumed Real Property Leases (collectively, the "**Real Property Lease Counterparties**") during the period from the Petition Date through and including the Effective Date.

        (ii)     <u>Cure Amounts</u>.

        (a)     Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease, or as provided in the Applebee's Settlement Agreement with respect to the Applebee's Assumed Contracts, any monetary defaults arising under each executory contract and unexpired lease to be assumed pursuant to the Plan and this Confirmation Order shall be deemed satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable Cure Amount, if any, set forth on **Exhibit B-1** or **Exhibit B-2** attached hereto (or set forth in such other order of the Bankruptcy Court authorizing the assumption of such executory contract or unexpired lease pursuant to the Plan) in Cash on the later of thirty (30) days after (a) the Effective Date or (b) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision). For the avoidance of doubt, payment of the Cure Amounts with respect to Applebee's Assumed Contracts  shall be made in full on the Effective Date as provided in the Applebee's Settlement Agreement. Assumption of any executory contract or unexpired lease pursuant to the Plan and this Confirmation Order or otherwise, subject to the payment of the Cure Amount, if any, shall result in the full release and satisfaction of any Claims

36

or defaults, except as otherwise provided in this Confirmation Order, whether monetary or non-monetary, including defaults relating to the change of control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Effective Date.  Except as set forth in paragraph 21(ii)(b) of this Confirmation Order, the non-Debtor counterparties to the executory contracts and unexpired leases assumed pursuant to the Plan and this Confirmation Order or otherwise shall be deemed to have consented to the Cure Amounts, if any, set forth on **Exhibit B-1** or **Exhibit B-2** attached hereto, and shall be forever enjoined and barred from seeking any additional amount(s) on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors or their Estates or the Reorganized Debtors.  The Debtors shall enjoy all of the rights and benefits under such executory contracts and unexpired leases without the necessity of obtaining any party's written consent to the Debtors' assumption of such executory contracts and unexpired leases, and the counterparties thereto shall be deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of such executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order.

(b)    Notwithstanding anything to the contrary herein, with respect to the Assumed Real Property Leases set forth in **Exhibit B-2** attached hereto for which the Real Property Lease Counterparties filed timely objections to the Cure Amounts as to attorneys' fees (collectively, the "**Adjourned Real Property Lease Cure Amounts**"), which have not been resolved as of the entry of this Confirmation Order, the Cure Amounts are adjourned, solely as they pertain to attorneys' fees, and the Adjourned Real Property Lease Cure Amounts shall be fixed at the amounts agreed in writing between the Debtors and the applicable Real Property Lease Counterparties or, in the event that no such agreement is reached prior to the date thereof, the amounts ordered by the Bankruptcy Court at the omnibus hearing in the Chapter 11 Cases on

January 29, 2019 (or such other date agreed to by the Debtors and the applicable Counterparties). Immediately upon the amount of an Adjourned Real Property Lease Cure Amount becoming fixed as provided for herein, such fixed amount shall be added to the "Cure Amount" for all purposes under this Confirmation Order. Notwithstanding anything to the contrary herein, with respect to any Adjourned Real Property Lease Cure Amounts, the Debtors shall pay such Adjourned Real Property Lease Cure Amounts within the later of (i) ten (10) days of the Effective Date and (ii) ten (10) business days after the amount thereof becomes fixed as provided for herein, or such other date as the Debtors and the Real Property Lease Counterparties may otherwise agree.

(iii)    Pre-Effective Date Amendments to Executory Contracts and Unexpired Leases. Prior to assuming any executory contracts and unexpired leases as provided for in this Confirmation Order and in the Plan, pursuant to section 365(b) of the Bankruptcy Code, the Debtors (a) are authorized, in their discretion, to enter into any amendments and modifications to such executory contracts and unexpired leases; and (b) are authorized and empowered to take any and all steps to perform such other and further actions as are necessary to carry out, effectuate or otherwise enforce the terms, conditions and provisions of any such amendments and modifications, without further notice to or action, order or approval of the Bankruptcy Court. Unless otherwise specified on **Exhibit B-1** or **Exhibit B-2** attached hereto, each executory contract and unexpired lease listed shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by an agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the **Exhibit B-1** or **Exhibit B-2** attached hereto.

38

(iv) <u>Restrictions on Assignment Void</u>.  Any executory contract or unexpired lease assumed or assumed and assigned pursuant to the Plan and this Confirmation Order shall remain in full force and effect to the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 541(c)(1) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment, including based on any change of control provision. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease, terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition thereof on any such transfer or assignment (including on account of any change of control provision), constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

(v) With respect to any Assumed Real Property Lease, nothing in the Plan or in this Confirmation Order shall modify the Debtors' or Reorganized Debtors' obligation, as applicable, to pay: (i) amounts owed under the Assumed Real Property Lease that are unbilled or not yet due as of the Effective Date, whether accruing prior to or after the Effective Date, such as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the Assumed Real Property Lease, whether accruing prior to or after the Effective Date, as such charges become due in the ordinary course in accordance with the terms of the Assumed Real Property Lease; (ii) any percentage rent that may come due under the Assumed Real Property Lease; (iii) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and

39

occupancy of the premises prior to the Effective Date for which the Debtors had a duty to indemnify such landlord, or the Debtors' or Reorganized Debtors' obligation, as applicable, to pay any postpetition expenses under such Assumed Real Property Lease as they come due thereunder; and (iv) any unpaid cure amounts or post-assumption obligations under the Assumed Real Property Lease.

(vi) Nothing included in or omitted from this Confirmation Order, nor as a result of any payment made pursuant to this Confirmation Order, shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates, subject to appropriate notice and a hearing and the Bankruptcy Court's approval unless otherwise agreed to by the respective counterparties to such contracts and leases, to assign any executory contracts and unexpired leases assumed pursuant to the Plan and this Confirmation Order, including, without limitation, any of the Assumed Real Property Leases, pursuant to, and in accordance with, the requirements of section 365 of the Bankruptcy Code.

(vii) Nothing herein is intended or shall be deemed to constitute a finding, determination or ruling that any of the Assumed Real Property Leases set forth herein are severable from the Fourth Amended and Restated Master Lease Agreement, dated March 8, 2018, or the Second Amended and Restated Master Lease Agreement, dated April 9, 2018, both as between STORE Master Funding II, LLC and RMH Franchise Corporation, as applicable.

(viii) Any and all rights, claims and defenses of the Debtors and their estates with respect to any executory contracts and unexpired leases assumed pursuant to the Plan and this Confirmation Order, including, without limitation, the Assumed Real Property Leases, shall be reserved, and nothing included in or omitted from the Plan or this Confirmation Order shall impair, prejudice, waive or otherwise affect any such rights, claims and defenses.

40

(ix)     Notwithstanding (i) anything to the contrary in section 365 of the Bankruptcy Code, the Plan or this Confirmation Order and (ii) the entry of this Confirmation Order and any occurrence of the Effective Date prior to a particular Extension Date (as defined below), in accordance with that certain *Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases of Non-Residential Real Property Pursuant to Section 365 of the Bankruptcy Code, (II) Approving the Extension of Certain Assumption Deadlines, and (III) Fixing of Cure Amounts With Respect Thereto* [Docket No. 843] (the "**Extension Order**") or the agreement of the non-Debtor parties to such leases, the unexpired leases of non-residential real property set forth on **Exhibit B-3** attached hereto (each, an "**Extension Lease**," and collectively the "**Extension Leases**") shall remain subject to assumption or rejection through and including the applicable dates set forth on **Exhibit B-3** attached hereto (each, an "**Extension Date**"). In the event that the Debtors seek to assume any of the Extension Leases, the Debtors may (but shall not be required to) submit a proposed order, under certification of counsel, authorizing such assumption, provided that the Debtors obtain the prior consent of the counterparty to the particular Extension Lease to proceed under certification of counsel.

(x)     **In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other parties to such executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Reorganized Debtors on or before the date that is thirty (30) days after service of the notice of the effective date of such rejection (which may be the Effective Date, the date**

41

on which the Debtors reject the applicable contract or lease as provided in Section 9.1 of the Plan or pursuant to an order the Bankruptcy Court), which notice shall specify the bar date for such proof of claim to be filed.

(xi)    Nothing in this paragraph 21 of this Confirmation Order is intended or shall be deemed to apply to any unexpired leases of non-residential real property assumed pursuant to the Extension Order and such unexpired leases shall be treated as provided in the Extension Order.

22.    <u>Employment Agreements</u>.    Any and all employment agreements and severance policies and all compensation and benefit plans, policies and programs of the Debtors applicable to their employees and non-employee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accident death and dismemberment plans entered into prior to the Petition Date and not since terminated or modified, shall on the Effective Date be treated as Executory Contracts and assumed pursuant to the Plan and the provisions of section 365 and 1123 of the Bankruptcy Code.  For avoidance of doubt, none of the employment or similar agreements that are the subject of the Debtors' motion to reject appearing at Docket No. 873 in the Chapter 11 Cases shall be assumed pursuant to the Plan or this Confirmation Order.

23.    <u>Approval of Discharge, Releases, Injunctions, and Exculpations Approved</u>.  In light of all of the circumstances and the record in the Chapter 11 Cases, including the evidenced proffered or addressed at the Confirmation Hearing and through the Blocher Declaration, each of the discharge, injunctions, indemnifications and exculpations provided under the Plan, including those, without limitation, set forth in Sections 10.01, 10.02(a), 10.02(b), 10.02(c), 10.03(a), 10.3(b), 10.04 and 10.05 of the Plan, are hereby approved as being (i) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b) and

1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions and settlements incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtors and the Estates; (v) critical to the overall objectives of the Plan; and (vi) consistent with sections 105, 1123, 1129 and all applicable provisions of the Bankruptcy Code and applicable law.

24.     **Debtor Releases.  The Debtor Releases provided in Section 10.02(a) of the Plan are hereby approved.**

25.     **Debtors and ACON Release of Applebee's.  The releases provided in Section 10.02(b) of the Plan are hereby approved.**

26.     **Debtors' Release of Senior Lender Releasees.  The releases provided in Section 10.02(c) of the Plan are hereby approved.**

27.     **Third-Party Releases.  The Third-Party Releases provided in Section 10.03(a) of the Plan are hereby approved.**

28.     **Applebee's Release of the Debtors and ACON.  The releases provided in Section 10.03(b) of the Plan are hereby approved.**

29.     **Exculpation.  The Exculpation provided in Section 10.04 of the Plan is hereby approved.**

30.     **Discharge.  Upon the Effective Date and in consideration of distributions to be made pursuant to the Plan, except as otherwise expressly provided in the Plan or in this Confirmation Order, the Debtors shall be discharged from any debt that arose before the entry of this Confirmation Order and any debt of any specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, to the fullest extent permitted by section 1141(d) of the Bankruptcy Code.  Except as otherwise expressly provided in the Plan, upon the Effective Date, all such holders of Claims and Equity Interests and their affiliates shall**

01:23763283.15

be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in any Debtor or any Reorganized Debtor.

      31.    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan or in any document, instrument, release or other agreement entered into in connection with the Plan, upon the occurrence of the Effective Date, all Persons or Entities who directly or indirectly have held, hold,  may hold, or seek to assert  Claims and/or Equity Interests that have been released pursuant to Sections 10.02 and 10.03 of the Plan, or which have been exculpated pursuant to Section 10.04 of the Plan (collectively the "Released Claims") shall be enjoined from taking any actions to interfere with the implementation of the Plan, and are permanently enjoined and forever barred from taking any of the following actions with respect to the Released Claims: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Released Claims; (iii) creating, perfecting,  or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Released Claim; (iv) asserting any right of setoff (other than a setoff exercise prior to the Petition Date), or subrogation of any kind on account of or in connection with or with respect to any such Released Claim; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Released Claim, except on terms consistent with the Plan.

      32.    <u>Continuation of the Automatic Stay</u>.  All injunctions or stays, whether imposed by operation of law or by Order of the Bankruptcy Court, provided for in the Chapter 11

Cases, pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise, that are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. As of the Effective Date, the stay imposed pursuant to section 362(a) of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth in the Plan, herein and/or sections 524 and 1141 of the Bankruptcy Code, except that nothing herein shall bar the filing of documents in connection with or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan, the Plan Documents or this Confirmation Order.

33.    <u>General Authorizations</u>.  Pursuant to section 1142(b) of the Bankruptcy Code, Section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar law of any applicable state, the Debtors, the Reorganized Debtors and any other necessary parties are authorized and empowered without further corporate action or action of the Debtors' directors or shareholders or any other person to (i) execute and deliver any instrument, agreement or document and (ii) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and this Confirmation Order and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan including, without limitation, entering into each of the Plan Documents, the Applebee's Settlement Agreement and the Exit Facility.

34.    <u>Authorizations</u>.  Pursuant to section 1142(b) of the Bankruptcy Code, Section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar law of any applicable state, the Debtors, the Reorganized Debtors and any other necessary parties (including, without limitation, ACON) are authorized,

45

empowered, and directed to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, all without further corporate action or action of the Debtors' directors or stockholders or any other person, including, without limitation, adoption of amendments to the by-laws or similar governing document, the appointment on the Effective Date of the board of directors or other similar governing body of each Reorganized Debtor, issuance of the Plan Sponsor New Common Stock and execution, delivery and performance of the Exit Facility Documents.

35.    <u>Governmental Approvals</u>.    Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents, mortgages, deeds of trust, security filings, financing statements and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State, Commonwealth or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

36.    <u>Exemption From Transfer Taxes</u>.    Pursuant to section 1146(a) of the Bankruptcy Code, neither the issuance, transfer or exchange of a security, or the making or the delivery of an instrument of transfer under the Plan, including without limitation, the issuance of the Plan Sponsor New Common Stock shall subject the Debtors, the Estates, or the Reorganized Debtors to any state or local law imposing a stamp tax or similar tax.    All recording and filing officers and clerks wherever located are hereby authorized to accept for filing or recording, and to file or record immediately upon presentation thereof, any and all documents and instruments necessary, useful, or appropriate to effectuate, implement and consummate the transactions

01:23763283.15

contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law. The Reorganized Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer must accept for filing such security interests without charging any stamp tax or other similar tax or fee within the scope of section 1146(a) of the Bankruptcy Code.

37.    <u>Bar Date for Administrative Claims</u>.    A holder of an Administrative Claim, other than: (i) a Professional Claim, including any claim of Mastodon for services performed and expenses incurred in connection with its retention order entered in the Chapter 11 Cases appearing at Docket No. 381; (ii) claims of GlassRatner for services performed and expenses incurred in accordance with its retention order entered in the Chapter 11 Cases at Docket No. 376; (iii) an Administrative Claim filed with the Bankruptcy Court prior to the Effective Date that has not been adjudicated by the Bankruptcy Court; (iv) an Administrative Claim that has been Allowed on or before the Effective Date; (v) claims of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) not required to be filed pursuant to section 503(b)(1)(D) of the Bankruptcy Code; and (vi) a claim for U.S. Trustee Fees, must submit to the Claims and Solicitation Agent a request for such Administrative Claim so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after service of the notice of occurrence of the Effective Date, which notice shall include such bar date. Such request must be served on counsel for the Debtors, the U.S. Trustee and counsel for the Committee, and must include at a minimum: (a) the name of the Debtor(s) that is purported to be liable for the Administrative Claim; (b) the name of the holder of the Administrative Claim; (c) the amount of the Administrative Claim; (d) the basis of the Administrative Claim; and (e) all supporting documentation for the Administrative Claim. **ABSENT FURTHER ORDER OF THE BANKRUPTCY COURT, FAILURE TO FILE AND SERVE SUCH REQUEST**

**TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND UNABLE TO COLLECT FROM THE ASSETS OF THE DEBTORS OR REORGANIZED DEBTORS.**

38.    <u>Professional Claims</u>. As provided in Section 2.02 of the Plan, all requests for compensation or reimbursement of Professional Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the counsel for the Debtors, the U.S. Trustee, counsel for the Committee, counsel for the Administrative Agent and all other parties required to be served by the Interim Compensation Order, no later than forty-five (45) days after the Effective Date unless the Plan, this Confirmation Order or a separate order of the Bankruptcy Court expressly provides otherwise. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Professional Claims shall be deemed waived as of the Effective Date. Objections to any Professional Fee Claims must be filed and served on the Debtors, counsel for the Debtors, counsel for the Committee, counsel for the Administrative Agent, the U.S. Trustee, the requesting Professional, and all other parties required to be served pursuant to the Interim Compensation Order thirty (30) days after the filing and service of such request.

39.    <u>Payment of Fees</u>. To the extent not previously paid or disputed by the Debtors, all fees due pursuant to section 1930 of Title 28 of the U.S. Code (the "**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date. For the sake of clarity, the Debtors shall not be required to pay any estimated Quarterly Fees for any period that straddles the quarters. The Debtors shall file with the Bankruptcy Court all Quarterly

48

Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee.  After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court Quarterly Reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  Notwithstanding any substantive consolidation set forth in the Plan, each of the Debtors, and the Reorganized Debtors shall remain obligated to pay their respective Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

40.     <u>Dissolution of the Committee</u>.  The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases, including the Plan and its implementation, and the retention and employment of the Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date without further order of the Bankruptcy Court, <u>except</u> with respect to Professional Claims and representation of the Committee with respect thereto.

41.     <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code including, without limitation, for the purposes set forth in Article XII of the Plan.

42.     <u>Plan Amendments and Modifications</u>.  The Debtors are authorized to amend or modify the Plan at any time prior to the Effective Date of the Plan in accordance with section 1127(b) of the Bankruptcy Code and Section 11.01 of the Plan.  In addition, without the need for further order or authorization of the Bankruptcy Court, but subject to the provisions of this Confirmation Order, prior to the Effective Date, the Debtors are authorized and empowered

as may be necessary to make non-material modifications to the documents filed with the Bankruptcy Court, including the Plan Documents, in their reasonable business judgment, as well as such other modifications that are made in accordance with the terms of the Plan or applicable Plan Documents.    In addition, without the need for further order or authorization of the Bankruptcy Court, but subject to the provisions of this Confirmation Order, after the Effective Date, the Reorganized Debtors are authorized and empowered as may be necessary to make non-material modifications to the documents filed with the Bankruptcy Court, including the Plan Documents, in their reasonable business judgment, as well as such other modifications that are made in accordance with the terms of the Plan or applicable Plan Documents.

       43.    <u>Notices of Entry of Confirmation Order; Occurrence of the Effective Date and Various Deadlines</u>.  As soon as practical after entry of this Confirmation Order, the Debtors shall serve by first class mail, postage prepaid, pursuant to Rules 2002(f)(7), 2002(k) and 3020(c) of the Bankruptcy Rules, notice of entry of this Confirmation Order on all holders of Claims and Equity Interests, the United States Trustee and all parties having filed notices of appearance and requests for notice in the Chapter 11 Cases, by causing a notice in substantially the form of the notice annexed hereto as **Exhibit C**, which form is hereby approved (the "**Confirmation Notice**"); <u>provided</u>, <u>however</u>, that the Confirmation Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any person to whom the Debtors mailed a notice of the Confirmation Hearing but received such notice returned and marked "undeliverable as addressed," "moved - left no forwarding address" or "forwarding order expired," or similar marking, unless the Debtors have since been informed in writing by such person of that person's correct address.  As soon as practical after the occurrence of the Effective Date, the Debtors shall serve by first class mail, postage prepaid, notice of (i) the occurrence of the Effective Date; (ii) Administrative Claims Bar Date; (iii) the

50

deadline to file Professional Claims, on all professionals retained in the Chapter 11 Cases, the United States Trustee and all parties having filed notices of appearance and requests for notice in these cases, by causing a notice in substantially the form of the notice annexed hereto as **Exhibit D**, which form is hereby approved (the "**Effective Date Notice**"). The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

44.    References to Plan Provisions.    The terms of the Plan are an integral part of this Confirmation Order and are incorporated herein by reference. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not affect, diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that entry of this Confirmation Order constitutes approval and confirmation of the Plan in its entirety.

45.    Claims of Governmental Units.    Nothing in this Confirmation Order or the Plan discharges, releases, precludes or enjoins (i) any liability to any Governmental Unit that is not a "claim" as defined by section 101(5) of the Bankruptcy Code; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of the property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan affect any Governmental Unit's setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, or recoupment rights. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan.

46.     Resolution of Administrative Agent's and Senior Lenders' Objection. The objection to confirmation of the Plan filed by the Administrative Agent is resolved pursuant to the Senior Lender Settlement. In accordance with the Senior Lender Settlement, ACON (or any other holder of the Plan Sponsor New Common Stock issued pursuant to the Plan) shall not receive any distributions, dividends, or transfer of cash or other assets from the Reorganized Debtors on account of the Plan Sponsor New Common Stock in excess of $42,000,000 prior to the payment in full of the Credit Agreement Deferred Payment to the Administrative Agent.

47.     Resolution of McLane Food Services, Inc.'s Informal Objection. On the Effective Date, the Debtors shall pay McLane Food Services, Inc. ("**McLane**") $379,547.80 in full and final satisfaction of any and all Claims asserted by McLane against the Debtors or Reorganized Debtors pursuant to section 503(b)(9) of the Bankruptcy Code.

48.     Resolution of Bank of America, N.A. Cure Objection. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, in connection with the assumption of the Merchant Agreement for Card Processing Services (the "**Merchant Services Agreement**") with Bank of America, N.A., nothing shall modify the Debtors' or Reorganized Debtors' (as applicable) obligation to pay amounts owed under the Merchant Services Agreement accruing prior to or after the Effective Date as such obligations come due in the ordinary course of business in accordance with the terms of the Merchant Services Agreement.

49.     Resolution of ARC CAFEUSA001, LLC Objection. Solely with respect to the Assumed Real Property Leases to which the Debtors and ARC CAFEUSA001, LLC are parties (collectively, the "**ARC Leases**"), the second sentence of Section 6.02(c) of the Plan, which provides "To the extent the Cure Dispute is resolved or determined unfavorably to the Debtors or Reorganized Debtors, as applicable, the Debtors or the Reorganized Debtors, as

applicable, may reject the applicable executory contract or unexpired lease after such determination," shall not apply to the ARC Leases.

     50.    <u>Resolution of Certain Objections of the Ballard Landlords</u>.

     (a)    Solely with respect to the Assumed Real Property Leases to which one or more of the Debtors and ARC NPHUBOH001, LLC, Brixmor Operating Partnership LP, Brookfield Property REIT Inc., Starwood Retail Partners LLC, STORE Master Funding II, LLC, STORE SPE Applebee's 2013-1, LLC, Tasha Dellagatta, The Macerich Company, Westfest, LLC, WRI Trautmann, L.P., and Yavapai-Prescott Indian Tribe (collectively, the "**Ballard Landlords**") are parties (collectively, the "**Ballard Leases**"), the second sentence of Section 6.02(c) of the Plan, which provides "To the extent the Cure Dispute is resolved or determined unfavorably to the Debtors or Reorganized Debtors, as applicable, the Debtors or the Reorganized Debtors, as applicable, may reject the applicable executory contract or unexpired lease after such determination", and the second sentence of Section 6.09 of the Plan, which provides "In the event of a dispute regarding whether a contract or unexpired lease is or was executory at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have until: (i) thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of any such contract; or (ii) the entry of the Confirmation Order to alter the treatment of any such unexpired lease", shall not apply to the Ballard Leases.

     (b)    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Cure Amounts for the Ballard Leases shall be paid within ten (10) business days after the Effective Date with the exception of the Adjourned Real Property Lease Cure Amounts, which are adjourned as provided for herein solely as they pertain to attorneys' fees to the omnibus hearing scheduled in the Chapter 11 Cases for January 29, 2019.

(c)     Notwithstanding any of the release, discharge, injunction or waiver provisions to the contrary set forth in the Plan, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease with the Debtors or the Reorganized Debtors.

51.     Resolution of Texas Comptroller Objection.  Nothing in this Confirmation Order or the Plan enjoins the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") from proceeding with any pending tax audits nor affects any rights or defenses the Texas Comptroller, the Debtors or the Reorganized Debtors may have in accordance with applicable federal and state law with respect to the pending tax audits.

52.     Resolution of the IRS Objection.  Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any Plan Documents (collectively, the "**Documents**"):  Solely as to the United States, nothing in the Documents shall: (1) affect the rights of the United States, if any, to assert setoff and recoupment and such rights are expressly preserved and the substantive consolidation provisions in the Plan shall not affect the requirements of section 6402 of the Internal Revenue Code and section 553 of the Bankruptcy Code, including but not limited to the mutuality requirements; (2) require the United States to file a request for payment of an expense described in section 503(b)(1)(B) and (C) as provided in section 503(b)(1)(D) of the Bankruptcy Code; (3) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors or any non-Debtor; (4) cause a Claim of the United States that would otherwise be allowed pursuant to section 502 of the Bankruptcy Code to be treated as a Disputed Claim; (5) release, enjoin or

54

discharge any non-Debtor from any Claim, liability, interest, suit or cause of action of the United States nor shall anything in the Documents enjoin the United States from bringing any claim, suit, cause of action or other proceeding against any non-Debtor for any liability whatsoever; (6) be construed as a compromise or settlement of any Claim, liability, suit, cause of action or interest of the United States; (7) expand or narrow the scope of the estimation procedures set forth in section 502(c) of the Bankruptcy Code; (8) expand or narrow the scope of the relief set forth in section 525 of the Bankruptcy Code; (9) expand or narrow the scope and duration of the automatic stay provisions under section 362 of the Bankruptcy Code; (10) discharge any debt described in section 1141(d)(6) of the Bankruptcy Code; or (11) absolve the Reorganized Debtors or any other Distribution Agent from any liability for failing to make any required tax withholdings.  Administrative expense Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall be paid in full and, as provided in section 511 of the Bankruptcy Code, shall accrue interest and penalties as provided by non-bankruptcy law until paid in full. To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) allowed pursuant to the Plan or the Bankruptcy Code, if any, are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in section 511 and section 1129(a)(9) of the Bankruptcy Code.  Penalty claims of the United States shall be paid according to the provisions of the Bankruptcy Code and shall be assessable by the United States in accordance with applicable law.  Moreover, nothing shall effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-

01:23763283.15

petition tax period. Further, nothing shall enjoin the United States from amending any timely Claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any tax liability allowed pursuant to the Plan or the Bankruptcy Code arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with section 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Reorganized Debtors, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under section 505 of the Bankruptcy Code. Except as otherwise provided in this paragraph, the Debtors and the Reorganized Debtors reserve their rights under applicable law to object to or otherwise contest any Claims asserted by the IRS. The IRS agrees that the Debtors or Reorganized Debtors are not required to make a distribution under the Plan on account of a Claim asserted by the IRS against the Debtors if the Debtors file an objection to such Claim on or before the later of 90 days from the Effective Date or 90 days the filing of the Claim. The IRS further agrees that the Debtors or Reorganized Debtors shall have 90 days from the Effective Date to object to proofs of claims numbered 18 and 19.

53.    Upon the occurrence of the Effective Date, the motion to approve the Applebee's Settlement Agreement [Docket No. 818] shall be deemed moot.  Also upon the occurrence of the Effective Date, the motion to sell substantially all of the Debtors' assets appearing at Docket No. 814 shall be deemed withdrawn.

54.    As a condition to the Senior Lender Settlement and the effectiveness of the Plan, the Effective Date shall occur on or before December 31, 2018, absent further order of the Bankruptcy Court or unless otherwise agreed to by the Debtors, the Plan Sponsor, and the Administrative Agent.

55.    Confirmation Order Controlling.  If there is any direct conflict between the Plan or any Plan Documents and this Confirmation Order, the terms of this Confirmation Order shall control.

56.    Separate Confirmation Order.  This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes.

57.    Vacatur of Confirmation Order.  If this Confirmation Order is vacated by a Final Order, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (iii) prejudice in any manner any right, remedy or claim of the Debtors; or (iv) be deemed an admission against interest by the Debtors.

58.    Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

59.     <u>Immediately Effective Order</u>.    Notwithstanding Bankruptcy Rules 7062

and 3020(e), this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated:    December [13], 2018
          Wilmington, Delaware

_____
Brendan Linehan Shannon
United States Bankruptcy Judge

58